In the Matter of the Application of the CITY OF ROCHESTER to Acquire Certain Water Rights. ·

WILLIAM HAMILTON, Appellant, *v.* GEORGE R. SMITH, as Executor, etc., Respondent.

| | |
|---|---|
| 110 | 159 |
| 112 | 185 |
| 110 | 159 |
| 116 | 156 |
| 110 | 159 |
| 124 | 368 |
| 110 | 159 |
| 127 | 314 |
| 110 | 159 |
| 133 | 458 |
| 110 | 159 |
| 136 | 90 |
| 136 | 112 |
| 110 | 159 |
| 146 | 34 |

Payment of debts will not be charged upon a devise of real estate without clear evidence of such an intent in the will; the intention may not be presumed merely from the use of formal words, or the presence of commonly employed phrases.

Inadequacy of the personalty is not suggestive of an intent to charge the realty with the payment of debts, in view of the provisions of the Code of Civil Procedure (§§ 2749, 2750), permitting a resort to the real estate by the creditors of a decedent.

The disposing clause in the will of S. commenced as follows : " After all my lawful and just debts are paid and discharged, I give and bequeath," etc. Then followed a gift to the testator's wife of one-third of the personalty and the income of one-third of the real estate during her life; the remainder to his son G., one-half thereof absolutely; the other half in trust for the testator's daughter E. The will gave to G., who was appointed sole executor, discretionary power to sell the real estate, which consisted mainly of a mill property, and to continue the milling business. The testator's personal estate at the time of his death, which occurred soon after making the will, was totally insufficient to pay his debts. *Held*, that this fact, taken in connection with the will, failed to show an intention to charge the real estate with the payment of debts; that, upon the testator's death, G. took an absolute title to an undivided one-half of the real estate, and, upon a subsequent conveyance to him by the widow and E. of the mill premises, his title became perfect, subject only to a disposition thereof by proceedings under the statute, instituted by the testator's creditors to compel a payment of their debts.

After the testator's death, the city of R. commenced proceedings to acquire title to certain water rights which were appurtenant to the mill property. G. soon after assigned to H. all his interest in any award as security for his indebtedness to H., and thereafter made a general assignment to H. for the benefit of creditors. An award was made to G. and E., as owners, of $21,000. *Held*, that by the devise and conveyance G. became entitled to the award, freed from any claims on the part of the testator's creditors; that under and by the assignments H. became entitled to the whole of the fund; to repay himself, first, the amount ·of the indebtedness secured, and to distribute the residue among the creditors of his assignor under the general assignment.

*In re City of Rochester* (46 Hun, 651) reversed.

(Argued June 5, 1888; decided June 29, 1888.)

APPEAL from order of the General Term of the Supreme Court, in the fifth judicial department, made October 4, 1887, affirming an order of Special Term which denied a motion to confirm the report of a referee and directed as to the disposition of an award herein for certain water rights condemned for the use of the city of Rochester. (Reported below, 46 Hun, 651.)

Prior to the year 1878 the city of Rochester constructed a system of water-works, by which it used certain water privileges which were appurtenant to the lands of one Hiram Smith. In that year he, with other owners of premises similarly affected, commenced an action to restrain the city. He was unsuccessful until, by the judgment of this court, his right to maintain the action was established. (92 N. Y. 463.) After the reversal by this court of the judgments below, an order of injunction was granted. Hiram Smith died May 14, 1883, leaving a will, dated April 10, 1883, by which he disposed of his real and personal estate as follows, viz. :

" *First.* After all my lawful and just debts are paid and discharged, I give and bequeath unto my wife, Emily C. Smith, one equal one-third of all the personal property of which I may die seized, and the use or income from one-third of my real estate, during the term of her natural life.

"*Second.* The residue or remainder of my real and personal estate of every name or nature, I give, devise and bequeath unto my son George R. Smith in manner following: One equal one-half of the same to him absolutely. The other equal one-half to him in trust for the benefit and maintenance of my daughter Emma C. Smith." * * * That testator empowered his son to manage Emma's share and to pay over to her the income and also such part of the principal as he might choose; and he might transfer to her the title to the property held by him as trustee and, upon properly accounting, thus release himself from the trust. Power was given to him, as executor or trustee, to sell, etc., any of testator's property and to invest the same according to his discretion, and the right was given also to continue the business in which

testator was engaged at the time of his death, in testator's name or otherwise, for such time as he might choose. George qualified as executor.

At the time of his death the testator was engaged in the milling business. In November following his death, for considerations expressed in the conveyance, the widow and daughter of deceased conveyed to George the flouring-mill premises, water privileges and rights, now in question, the machinery, stock in trade and indebtedness due the estate; he assuming payment of all incumbrances and indebtedness.

In March, 1884, the city of Rochester instituted these proceedings to acquire, as against the owners of the mill property in question, and of other owners of mill privileges, the permanent and perpetual right to draw water to condemn the privileges injured thereby, and to ascertain, by commissioners, the amount of the compensation to be made to such owners. In June, 1885, the commissioners awarded to George and Emma Smith, as owners, the sum of $21,000. George, being indebted to William Hamilton, appellant herein, had assigned to him, in March, 1884, all his interest in the award as security for what was owing then and for what he might thereafter become indebted to him for. Hamilton's claim amounted, at the time of these proceedings, to some $14,000. In December, 1884, George made a general assignment to said Hamilton for the benefit of his creditors. When the award of damages was made the conflicting claims to the fund were referred for determination. They were made by Hamilton, by creditors of the decedent Hiram Smith and by George, as executor of his father's will. He filed his first account, as such executor, in September, 1886, which, at the time of these proceedings, had not been judicially settled; from which it appeared that there were presented debts against the estate, in addition to claims allowed and paid in full, amounting to about $25,000, of which about $23,000 remain unpaid and unsecured.

The referee sustained the claim of Hamilton to the fund in

virtue of the assignment to him individually and of the other assignment to him for the benefit of George's creditors, holding that the real estate was not devised · charged with the payment of testator's debts. At Special Term, however, his report in that respect was modified and payment ordered to be made to George, as executor, for distribution among the creditors of the estate. This disposition of the fund by the Special Term was sustained by the General Term, and from the order of the General Term Hamilton appealed to this court.

*Theodore Bacon* for appellant. The limitation prescribed by the statute constitutes a bar to any proceeding to charge the realty with the payment of debts. (*Slocum* v. *English*, 2 Hun, 78; 62 N. Y. 494; *Parkinson* v. *Jacobson*, 18 Hun, 353.) The court erred in holding that the will of Hiram Smith made his debts a charge upon his real estate. (*Lupton* v. *Lupton*, 2 Johns. Ch. 614; *Reynolds* v. *Reynolds*, 16 N. Y. 257, 261; *Shulters* v. *Johnston*, 38 Barb. 80, 84, 85, 90; *Myers* v. *Eddy*, 47 id. 263, 270, 274; Willard on Exrs. 392; *Kinnier* v. *Rogers*, 42 N. Y. 531.) Though the real estate be charged, yet the personal estate is the proper fund for the payment of debts and legacies and is to be first applied before charging the real estate. (*Lupton* v. *Lupton*, 2 Johns. Ch. 614.) If a testator gives a legacy without specifying who shall pay it, or out .of what fund it shall be paid, the legal presumption is that he intended it should be paid out of his personal estate only, and if that is not sufficient the legacy fails. (*Harris* v. *Fly*, 2 Paige, 425; *Myers* v. *Eddy*, 47 Barb. 271.) The state of the testator's property cannot be resorted to as a criterion to .explain his will. (*Tole* v. *Hardy*, 6 Cow. 333, 341; *Heslop* v. *Gatton*, 71 Ill. 528; *Wright* v. *Denn*, 10 Wheat. 81.) An unexpressed intent to charge debts upon the realty ought not to be inferred from a mere formula. (*Myers* v. *Eddy*, 47 Barb. 274; *Shallcross* v. *Finden*, 3 Ves. 738; *Shulters* v. *Johnston*, 38 Barb. 85; *Taylor* v. *Dodd*, 58 N. Y. 335, 347.) The residuary clause did not operate to charge the debts upon the real estate. (*Lupton* v. *Lupton*, 2 Johns. Ch. 623; *Rey-*

nolds v. *Reynolds*, 16 N. Y. 260 ; *Kinnier* v. *Rogers*, 42 id. 534 ; *Myers* v. *Eddy*, 47 Barb. 263 ; 3 Atk. 626, note ; 2 Johns. Ch. 624.) Even had the real and personal estate been blended, as assumed by the court, such blending does not operate to effect a charge not otherwise appearing in the will. (*Lupton* v. *Lupton*, 2 Johns. Ch. 623 ; *Nyssen* v. *Gretton*, 2 Y. & C. 222 ; *Reynolds* v. *Reynolds' Exrs.*, 16 N. Y. 261, 262 ; *Kinnier* v. *Rogers*, 42 id. 534.)

*J. A. Stull* for respondent. The injury to the Honeoye Falls mill property, caused by the construction of its water-works by the city of Rochester being in the nature of a trespass, did not run with the land, but a right of action therefor accrued to Hiram Smith before his death, was a personal claim, and on his death passed as personal property and not as real estate to his executor, and as such was a primary fund for the payment of his debts. (*Schuylkill & Susquehanna R. R. Co.* v. *Decker*, 2 Watts [Pa.] 343 ; *McFadden* v. *Johnson*, 72 Penn. 335, 336 ; *McClintock* v. *R. R. Co.*, 16 P. F. Smith, 409 ; *King* v. *Mayor, etc.*, 102 N. Y. 171, 175.) The first assignment to Hamilton was a mere mortgage, was not recorded ; the second assignment was a voluntary conveyance, without new or valuable consideration paid, and so neither of the assignments to Hamilton was protected by the recording acts. (*Tiffany* v. *Warren*, 37 Barb. 571 ; *Dickinson* v. *Tillinghast*, 4 Paige, 220 ; *Shotwell* v. *Harrison*, 30 Mich. 179.) All the bequests and devises of the will being made "after all just and lawful debts are paid and discharged," and as the residuary clause relates to both real and personal property without distinction between the two kinds of property and the executor is given a power to "sell, transfer and convey, mortgage or lease any of the property," it would be a strained and unreasonable construction to hold that this award was real property and that the testator did not intend to charge upon his real estate the payment of his debts. (*Shallcross* v. *Finden*, 3 Vesey, Jr. 738 ; *Lupton* v. *Lupton*, 2 Johns. Ch. 614 ; *Harris* v. *Fly*, 7 Paige, 421 ; *Tracy* v. *Tracy*, 15 Barb. 503 ; *Reynolds*

v. *Reynolds*, 16 N. Y. 257; *Manson* v. *Manson*, 8 Abb. N. C. 124; *Shulters* v. *Johnson*, 38 Barb. 808; *Taylor* v. *Dodd*, 58 N. Y. 334, 335, 346.) Since by the will the real as well as the personal estate was charged with the payment of the testator's debts the provision of the Code of Civil Procedure, referred to by the referee (§ 2749), is not applicable, including the three years limitation therein provided (Code, § 2750). The claim to the fund was held in trust by George R. Smith, as executor, and if Hamilton received it at all, it came to him impressed with the same trust, so that he must account for it as trustee *ex maleficio*. (*Segelkin* v. *Meyer*, 94 N. Y. 474; *Boyce* v. *Brockway*, 31 id. 490; *Grand Trunk Railway* v. *Edwards*, 56 Barb. 408.)

GRAY, J. Section 2749 of the Code of Civil Procedure provides that "real property, of which a decedent died seized * * * may be disposed of for the payment of his debts and funeral expenses, as prescribed in this title, except where it is devised expressly charged with the payment of debts and funeral expenses," etc.

Section 2750 provides that such a disposition may be effected by a proceeding before the Surrogate's Court, instituted by unsecured creditors "at any time within three years after letters were first duly granted within the State, upon the estate of a decedent." By the force of these enactments, the debts of a decedent, by the rights of creditors, will seek the real estate when the personalty is exhausted, and the only restriction upon their rights is the not unreasonable one of the period of time within which they shall be enforced. As the three years had more than elapsed in this case, the statutory remedy of the creditors of Hiram Smith against the real estate is no longer available. The question of the proper disposition of the fund in question is, therefore, of considerable moment to the parties interested in his estate.

The water privileges, which the city of Rochester, through its proceedings, condemned, were appurtenant to the real estate devised by the testator. They constituted an easement

attaching to the land of the devisee, which would pass as an incident to it. This fund, therefore, partakes of the nature of realty, and for every purpose is to be treated as its representative here.

The General Term, in their conclusions below, seemed influenced, in construing the terms of the will, by extrinsic circumstances, which, when called in aid of the discovery of the intention of the testator, led them to find an intention to charge his lands with the payment of his debts. They concede that the power of sale is not, in terms, significant in that direction; but they thought the words " after all my just and lawful debts are paid and discharged," in the will, had such significance in connection with the fact that the testator's personal estate at the time of his death (which was shortly after the making of his will) was so inadequate for the purpose of discharging his debts, as to make the power of sale consistent with an intention that the debts should, so far as necessary, be a charge upon the realty.

Whether a general direction for the payment of debts and legacies charges the real estate with their payment, has been the subject of discussion in the courts from an early period. The question has more often been raised with respect to legacies. For obvious reasons, the question of whether debts are made a charge upon real estate devised has not demanded much attention from our courts. The existence of the statutory provisions referred to, which give to creditors a right to have the real estate of a decedent disposed of, and which are usually availed of, removes the necessity for raising that question. We do not think that the course of administration should be changed in this case, or ever, without clear evidence of intention. In *Lupton* v. *Lupton* (2 Johns. Ch. 614), the chancellor had before him the question of whether legacies were charged upon the real estate, and it is elaborately considered. But in the course of his opinion he made these remarks: " Thus, where the testator devises the real estate *after payment of debts and legacies*, as in *Tompkins* v. *Tompkins* (Prec. in Ch. 397), and in *Shallcross* v. *Finden*

(3 Vesey, 738), or where he devised the real estate after a *direction that debts and legacies be first paid*, as in *Trott v. Vernon* (Prec. in Ch. 430), and in *Williams* v. *Chitty* (3 Vesey, 545), the real estate has been held to be charged. It is not sufficient that debts or legacies are directed to be paid. That alone does not create the charge, but they must be directed to be first or *previously* paid. or the devise declared to be made *after* they are paid."

Courts should be slow to construe an intention to charge the payment of debts upon a devise of real estate, from the use in a will of formal words, or the presence of commonly employed phrases. Of such a case this seems a fair illustration. For, beyond the opening words of the will, "after all my lawful and just debts are paid, I give, etc., to my wife," etc., the instrument, concededly, is devoid of any expression or declaration by the testator of intention as to the mode of payment of his debts. These words have become a usual formula in wills, and to their presence in a will I think we should give no greater significance than was given by the Chancellor in *Lupton* v. *Lupton* (*supra*) to the use of the words which give "the rest, residue and remainder of real and personal estate not hereinbefore already devised and bequeathed." He said: "If that residuary clause created such a charge, the charge would have existed in almost every case, for it is the usual clause and a kind of formula in wills." If we except the formal words with which this will opens, the testator's language furnishes no inference or clue of intention. In *Kinnier* v. *Rogers* (42 N. Y. 531) it was said: "There is no special designation of the fund or property from which the debts and said annuities and legacies and provisions are to be paid and satisfied. The personal estate is, therefore, the primary fund applicable thereto, and the devise of the residuary estate, being in general terms, without any declaration or statement, that the real estate is given after or subject to the payment thereof, or of any part thereof, there is no ground for the inference that the testator intended to appropriate it to such purposes."

The case of *Reynolds* v. *Reynolds* (16 N. Y. 257), which has been cited, furnishes authority for the proposition that to create a charge upon real estate there must be either express directions to that effect, or the intention thus to charge it must be implied from the whole will taken together

In this will the gift of the residuary real and personal estate refers to what remains after the gifts, in the prior clause, to the wife of one-third of the personalty and of the income of one-third of the realty. No equitable conversion is worked of the real estate into personalty by the power of sale to George as the executor and trustee; for it was not obligatory upon him, and a merely discretionary power of selling produces no such result.

It may not be amiss to note the distinction here that the real estate was neither devised to the executor, nor was a fund given or created for the payment of the debts, beyond the personalty. Testator's son, George, was the devisee of an undivided interest in common with others, who had no part in the execution of the will. We recognize the rule insisted upon that the intention of the devisor is to be sought out by all possible investigation and observed with strictness, however untechnically expressed. The rule is one of construction adopted from a very early period, and it has uniformly been sustained in the courts. But we should be careful, in applying the rule, not to construct an intention from words which have acquired from constant use merely a formal or customary character and, for that reason, have ceased to have great import as expressions of the will maker. It is argued, however, that by the terms of this instrument, read in the light of surrounding circumstances, the testator's words, as to payment of his debts, are given a force, which as general words they might not otherwise have in the will. The General Term opinion concedes that they, or general words of like character, in the opening paragraph of a will, do not necessarily have the effect to make testator's debts a charge upon real estate. But the learned judge at General Term considered there was a blending of the disposition of the real and personal estate,

which, with the fact of the excess in the amount of his debts over his personal estate, seemingly made the entire devises and bequests subject to the payment of his debts. We cannot so view the terms of this will, or deduce such inferences from the surrounding circumstances. Inadequacy of the personalty is not suggestive of any intention, in view of the existing provisions of the Code of Civil Procedure, permitting a resort to the real estate by the creditors of a decedent. There was no blending of the real and personal estate in the residuary clause of this will. They are kept distinct by the prior clause and a different direction is given to each. The testator's wife was given one-third of the personalty and the income from one-third of the realty and the remainder is divided between his two children; the son taking his share absolutely and holding his sister's share in trust. The authority given in the will to his son to continue the milling business is hardly consistent with the existence at the time of an idea that the real estate necessary to its conduct should be charged with testator's debts.

The pending action against the city of Rochester is not a circumstance which can be taken as suggestive of any particular intention or expectation on testator's part. That action was brought for equitable relief, and success meant an injunction against further use of the water privileges, but no money recovery for the taking of property.

The proceedings by the city of Rochester to acquire the right of a perpetual use of the water privileges appurtenant to the real estate of which Hiram Smith died seized, were instituted after testator's death and when George, his son, by force of the devise in the will and of the conveyance from his mother and sister, was invested with the title to the whole of the real estate in question. Testator had a right of action for damages for the injury committed upon his property rights which would have survived to his executor; but the object of the proceeding by the city was the acquisition by condemnation proceedings of the interest of George, as the owner, in the property. Without further elaboration of the point, the conclusions at which we have arrived are : (1.) That

upon the death of Hiram Smith, his son George became vested with the absolute title to an undivided half of the real estate in question, subject to the provision for the widow from the income, free from any charge for the payment of the testator's debts, and, upon the conveyance to him by his mother and sister, his title to the whole became perfect; subject only to be disposed of through proceedings under the statute when instituted by creditors of the estate to compel a payment of their debts, for which the personalty was shown to be insufficient.   (2.) That the fund arising out of the proceedings instituted by the city of Rochester, to acquire in perpetuity the water privileges in question, vested in George R. Smith, as the owner, by said devise and conveyance, of the property taken, freed from the claims of testator's creditors. (3.) That by the assignment from George R. Smith, William Hamilton, this appellant, became entitled to the whole of the fund created by the award, with which he may first repay to himself the amount owing to him, for which the first assignment was made as security, and then is to distribute the balance remaining in his hands to the creditors of his assignor, under the second assignment made for their benefit.

The order of the General Term, therefore, should be reversed, and the order of the Special Term modified in accordance with the report of the referee, and as so modified affirmed, with costs to the appellant in both courts.

All concur, except DANFORTH, J., not voting.

Ordered accordingly.