In the Matter of the Judicial Settlement of the Accounts of
GEORGE A. POWERS, as Executor, etc.

To render a provision in a will effectual to furnish a greater security than
that given by law for the payment of debts in due course of administra-
tion, by charging them upon the real estate of the testator, the purpose
must quite clearly appear; a mere direction to pay debts out of the
property will not suffice.

Under the act of 1837, concerning executors and administrators (§ 37,
chap. 460, Laws of 1837), as amended in 1868 (Chap. 594, Laws of 1868),
and under the Code of Civil Procedure, the running of the Statute of
Limitations against a debt due an executor or administrator from, or
any cause of action in his favor against, the decedent, is suspended from
the time of the death of the latter until the first judicial settlement of
the accounts of the executor or administrator; and this, without regard
to the number of years embraced in that period.

124   361
127   314

124   361
136   112
136   420

124   361
138   423

124   361
440   408

124   361
146   260

124        361
78   AD²598

Where, therefore, fourteen years elapsed between the death of the decedent, and the first judicial settlement of an executor's accounts, *held*, that debts due him from the decedent, which were not barred by the statute at the time of the death of the latter, were properly allowed the executor.

The will of M. devised to her executor one-third of her residuary estate in trust, to receive the rents and income and apply the net proceeds to the use of a beneficiary named during life, and, on the death of the beneficiary, gave the property to her children; each of the other two-thirds was disposed of in a similar manner. The testatrix authorized her executor, at any time before final division and settlement of her estate, whenever he should deem proper for any "purpose which in his discretion may render it advisable so to do," to sell any part or portion thereof. The executor sold certain of the residuary real estate. Upon settlement of his accounts, certain claims presented by him against the estate were proved and allowed, and after applying the proceeds in his hands of the residuary personal estate, there remained a balance due him. *Held*, that the proceeds of the sales of the real estate were properly treated as assets in his hands, applicable to the payment *pro tanto* of his claims.

*In re McComb* (117 N. Y. 378), distinguished.

(Argued February 2, 1891; decided March 3, 1891.)

APPEAL by Mary L. O'Flyn, a beneficiary under the will of Sarah Macomber, deceased, from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 24, 1890, which affirmed a decree of the Surrogate's Court, settling the accounts of the executor of said will.

The material facts are stated in the opinion.

*Wm. J. Gaynor* for appellant. If the power of sale contained in the will be held broad enough to permit the sale of real estate by the executor to pay debts in default of insufficient personalty for that purpose, yet the said power was not exercised for that purpose in the conveyance of the four parcels for the aggregate sum of $10,850, because there was no lack of personalty, and, therefore, the said real estate was sold in the management and for the better preservation of the trust estates, and consequently the said sum of $10,850 belongs to the said trust estates, and the executor should be required to turn it over to the trust accounts. (*In re Van Dyke*, 44 Hun,

394; Code Civ. Pro. § 2739; *In re Fox*, 52 N. Y. 530; *Green-
land* v. *Waddell*, 116 id. 234; *Cooke* v. *Platt*, 98 id. 35;
*Hood* v. *Hood*, 85 id. 561; *In re Tilden*, 98 id. 434; *Hickey*
v. *Taafe*, 99 id. 204; Code Civ. Pro. §§ 2724, 2740, 2749,
2759; *In re McComb*, 117 N. Y. 378; *In re City of Rochester*,
110 id. 159; *Clift* v. *Moses*, 116 id. 144; *Smith* v. *Soper*, 32
Hun, 46; *Platt* v. *Platt*, 105 N. Y. 488; *Dodge* v. *Stevens*,
94 id. 209–216; *Sharpe* v. *Freeman*, 45 id. 802.) The exec-
utor should not have been allowed to prove his claims, as they
were barred by the Statute of Limitations, not having been
presented and proved within the time limited by law, and they
were excepted to and resisted on that ground. (*In re Van
Dyke*, 44 Hun, 394; Code Civ. Pro. §§ 2724, 2740.) The
term " judicial settlement," as used in the Code of Civil Pro-
cedure, can only mean a judicial settlement which the executor
or administrator can be required to make by those interested,
or which he can make to get an adjudication against them.
(Code Civ. Pro. § 2514.)

*Edward E. Sprague* for respondent. The executor's claims
against the estate were fully established by the evidence.
(*Lerche* v. *Brasher*, 104 N. Y. 157.) The claims of the exec-
utor are not barred by the Statute of Limitations. (Laws of
1837, chap. 460, §§ 33, 37; Laws of 1868, chap. 594; Code.
Civ. Pro. §§ 2739, 2740; *Campbell* v. *Purdy*, 5 Redf. 434;
*In re Wood*, 5 Dem. 345.) The proceeds of sales of real
estate are applicable to payment of debts. (Code Civ. Pro.
§ 3343; Penal Code, § 718; *People* v. *N. Y. & M. B. R.
Co.*, 84 N. Y. 565; *Jackson* v. *Honsel*, 17 Johns. 281; *Law-
rence* v. *Lawrence*, 1 Edw. 241; *Lupton* v. *Lupton*, 2 Johns.
Ch. 614; *White* v. *Kane*, 19 J. & S. 295; *In re Fox*, 52 N.
Y. 506; *Wood* v. *Wood*, 26 Barb. 366; *Smith* v. *Soper*, 32
Hun, 46; *Smith* v. *Conp*, 5 Dem. 251; *Taylor* v. *Dodd*, 58
N. Y. 335; *Hoyt* v. *Hoyt*, 85 id. 142; *Reynolds* v. *Reynolds*,
16 id. 259; Code Civ. Pro. § 2724; Laws of 1837, chap. 460;
*Erwin* v. *Loper*, 43 N. Y. 521; *Glacius* v. *Fogel*, 88 id. 434;
*Clark* v. *Clark*, 8 Paige, 152; *Bloodgood* v. *Bruen*, 2 Bradf.

8 ; *Stagg* v. *Jackson*, 1 N. Y. 206 ; *White* v. *Howard*, 46 id. 162.)

BRADLEY, J. The testatrix died April 5, 1873. Her will was admitted to probate and letters testamentary issued to George A. Powers April 10, 1873. His petition for judicial settlement of his accounts was presented to the surrogate September 29, 1887, and until then he had filed no account. The referee, by his report, which was confirmed by the surrogate's decree, in stating the account charged the executor with $119,618.69, and allowed to his credit $62,773.43, leaving a balance in his hands of $56,845.26 subject to reduction by his commissions, and the costs and expenses of the accounting. And the referee found that at the time of the death of testatrix she was indebted to the executor for moneys loaned to and expended for her by him to the amount of $37,636.66, the interest on which to the date of the report was $43,341.46 ; and that on December 11, 1872, the testatrix made to the executor her promissory note for $25,000, which remained unpaid, and that the interest upon it amounted to $27,722.20. And the referee further found that the executor was entitled to retain and apply in part payment of his claims the balance before mentioned remaining in his hands after payment of his commissions and the expenses of the accounting. The main questions arising upon the contestant's exceptions to the referee's report and to the decree of the surrogate are: (1) Whether the executor's claim was established ; (2) Whether it was barred by the Statute of Limitations ; (3) Whether he was entitled to application upon his claim of the proceeds, with which he was charged, of the sale of certain real estate by him. The testatrix owned considerable real estate in the city of Brooklyn, and in 1868 she, by power of attorney to Powers, vested him with powers quite plenary for its control and management, and to transact business for her and in her name, and his account with her was annually stated and certified by them in writing. The last statement subscribed by them May 1, 1872, was that all accounts having been examined, approved,

passed and settled, they released each other from all further examination of them, and there remained a " balance in favor of George A. Powers of thirty-seven thousand six hundred and thirty-three, sixty-six-one-hundredths ($37,633.66) dollars, which is carried to the new account commencing May 1, 1872, and is to draw interest from date." This established the balance due Powers at that date, and there is no evidence of the situation of the accounts between those parties thereafter during the life of the testatrix other than what appeared in his account filed with the surrogate, which charged him with a balance in his hands arising out of the transactions of that period of $9,052.25. This he sought in his account to apply by way of reduction of the balance of May 1, 1872, but upon the objection of the contestant it was not so deducted, but treated as assets in the hands of the executor. It does not appear that he refused to produce the account kept by him after that date, or to render it available to the contestant as evidence. The balance of the account so adopted by those parties in view of the rendition by the executor of what purported to be a statement of the subsequent account justified the conclusion of the referee on the subject. (*Lerche* v. *Brasher*, 104 N. Y. 157.) And the presumption which otherwise may have arisen that the note before mentioned was made and taken in settlement of the accounts between those parties, the referee was permitted to find was repelled by evidence to the effect that the note was given for services rendered by the payee for the maker.

It is urged that as fourteen years after the death of the testatrix elapsed before the claim of the executor was presented to the surrogate for proof and allowance, it was barred by the Statute of Limitations. Upon that subject the statute in force at the time of such death, provided that the Statute of Limitations should not be available as a defense to a debt or claim of an executor or administrator against the estate represented by him " provided the same shall be presented and claimed at the first accounting, and provided the same was not barred at the time of the death of the testator or intestate." (Laws

of 1837, ch. 460, § 37, as amended by L. 1868, ch. 594.)    And on the repeal of this statute in 1880, that substituted for it provided that " From the death of the decedent, until the first judicial settlement of an account of his executor or administrator, the running of the Statute of Limitations, against a debt due from the decedent to the accounting party, or any other cause of action, in favor of the latter against the decedent, is suspended.    *    *    *    After the first judicial settlement of the account of an executor or administrator, the Statute of Limitations begins again to run against a debt due to him from the decedent or any other cause of action in his favor against the decedent." (Code Civ. Pro. § 2740.)    The contention that it was not within the legislative contemplation that the suspension of the Statute of Limitations should be continued beyond six years succeeding one year after the granting of tetters testamentary or of administration, has no support in the plain language of the provision above mentioned.    The executor might within that time be required to account; and assuming that after that time he could not be required to do so, he may voluntarily do it thereafter as well as before; it is the first judicial settlement by him which relieves the statute from its suspension in its application to his claim as relates to the time within which he may prove and establish it in the Surrogate's Court.    And such was the settlement of the executor in the proceeding founded upon his petition before mentioned.    The statute was then no bar to his claim.

The further and more difficult question arises in respect to the disposition of $10,850, the proceeds of real estate sold by the executor.    And its consideration calls attention to the provisions of the will.    After bequeathing all her household furniture, ornaments, clothing, pictures, plate, etc., in and about her house, the testatrix devised to the executor certain buildings and premises in the city of Brooklyn, in trust to receive the rents, profits, issues and income thereof and after paying therefrom interest of incumbrances and taxes, to apply the residue to the use of her granddaughter Sarah A. Van Zandt,

during her life, and on her death gave the property to her children. The testatrix devised and bequeathed one-third part of the residue of her property and estate to the executor in trust to receive the rents, profits, issues and income thereof, and after paying therefrom one-third of the interest of incumbrances and taxes, to apply the residue from time to time to the use of her son Robert, during his life, and on his death she gave such one-third of the residue of her property and estate to the children of such son; and she gave and devised the other two-thirds of such residue to the executor upon a like trust to the use of another son and daughter (one-third each) during their lives, and on their deaths, respectively, gave the property to their children. And by a subsequent provision in the will she authorized and empowered the executor at any time before the final division and settlement of the estate, whenever he should think proper, either for the purpose of paying off incumbrances or of protecting her real estate or more equitably or conveniently dividing the same "or for any other purpose which in his discretion may render it advisable so to do, to sell and convey, or to mortgage any part or parts, portion or portions, share or shares" thereof, and to execute and deliver sufficient instruments for conveying or mortgaging the same. By the first clause of her will the testatrix says: "I direct that all my just debts (not secured by mortgage) and my funeral and testamentary expenses be paid by my executor out of my property, together with the legacy duties and taxes or other moneys which may be due to the United States in respect to the same, and all other taxes and assessments which may be due thereon at my death." It is urged on the part of the executor that by this provision of the will the debts of testatrix were charged upon her real estate. The mere direction for payment of the debts out of her property is in effect nothing more than a direction to pay them. In either case the purpose is indicated that they be paid out of the property of the decedent; and to render a provision in a will effectual to furnish a greater security than that given by law for the pay-

ment of debts in due course of administration, by charging them upon the real estate of the testator, the purpose must quite clearly appear. The question in that respect as to legacies has frequenty arisen, as to debts, seldom; and, although the intention to give such effect to the former must be expressly declared or clearly inferred from the langage of the will (*Lupton* v. *Lupton*, 2 Johns. Ch. 614), the courts may resort to extraneous circumstances bearing upon the intention of the testator in aid of construction (*Hoyt* v. *Hoyt*, 85 N. Y. 142), and may not overlook the relation of the beneficiaries of the will to the testator. (*Scott* v. *Stebbins*, 91 N. Y. 605; *McCorn* v. *McCorn*, 100 id. 511; *Briggs* v. *Carroll*, 117 id. 288.) In fact, to support such charge of legacies, the search for the intention of the testator is quite liberally extended, and properly so, as it is generally his purpose that they be paid, and in default of personalty the legatee is otherwise remediless. The debts are by law a charge upon the realty for three years from the granting of letters; and thereafter in case of deficiency of personal estate, the creditors have their remedy against the heirs and devisees to the extent in value of the real estate descended or devised to them. Those facts evidently may qualify or limit the application of some of the inferences, especially from extraneous circumstances, which may properly be considered in aid of interpretation in respect to legacies. (*In re City of Rochester*, 110 N. Y. 159; *Clift* v. *Moses*, 116 id. 144.)

Assuming that it was within the contemplation of the testatrix that if deemed by him necessary to do so, the executor might exercise the power of sale for the payment of debts, that would not have the effect to make the debts a lien upon the real estate, but rather that the proceeds of realty produced by sale for that purpose would be assets in his hands applicable to payment of them. Such would be the result of the exercise of a general power of sale. (*Erwin* v. *Loper*, 43 N. Y. 521; *Glacius* v. *Fogel*, 88 id. 434.) The power was given to the executor to sell for any purpose which in his discretion should render it desirable to do so. This placed it within his power

to make sale when in his judgment it was required to pay debts, taxes or other expenses within his trusts, and to the extent by him deemed necessary for such purpose, subject, however, to the qualification that some permissible occasion existed for the exercise of his discretion in that respect. The doctrine of the *McComb* case (117 N. Y. 378) is not applicable. There the discretionary power of sale given to the executors was to be exercised only for the benefit of the devisees and subject to the direction to apply the proceeds to their use; and it was held that it could not be converted into a power to sell to pay debts. The executor in the present case could not retain any of the property of the decedent in satisfaction of his claims until they were proved before the surrogate. (2 R. S. 88, § 33.) And they were subject to proof and contest upon a judicial settlement of his account, as was any other claim against the estate. (Code Civ. Pro. § 2739.) His debt not having been proved at the time of the sale of real estate the sale cannot be treated as made to pay it. By reference to the state of the executor's accounts during and until the end of the year 1874, it appears to have been such as to permit him to deem it advisable to make the sale of real estate, made by him in that year. During that time his disbursements as executor and trustee, exclusive of the proceeds of such sale, exceeded in amount the funds in his hands and derived from the estate within that period. It may, therefore, be assumed in view of such deficiency that the discretion exercised by him in making the sale of November, 1874, for $8,500 was within the power conferred upon him by the will. And the balance of the proceeds of that sale may be treated as assets in his hands as executor. But there seems to have been no occasion to make, for the payment of debts or expenses, the three sales of real estate made in March, 1876, for $1,100; July, 1879, for $750, and May, 1883, for $500. My view that the proceeds of those sales, amounting to $2,350, should be treated as held by him for the benefit of the residuary devisees would lead to modification of the surrogate's decree. But as it is the opinion of my associates that, after the execu-

tor's claims were proved and allowed, the proceeds of such sales should be treated as assets in his hands and as properly applicable to the payment *pro tanto* of his claims, the judgment must be affirmed.

All concur.

Judgment affirmed.