Henry B. Bolton and Another, Appellants, *v.* Sarah L. Myers and Another, Respondents.

*Executors' accounting — contestants not estopped by their previous objections — scope of a power of sale of realty contained in a will — extended to the payment of debts and legacies.*

Upon an accounting by executors, by reason of the objection on the part of the contestants that the executors could not bring a fund realized by the sale of a portion of the testatrix' realty into the Surrogate's Court and there account for it, the item representing such fund was withdrawn from the account. *Held*, that such contestants, though wrong in their original contention, having received no part of the fund to which they were entitled, were not estopped from afterwards compelling the executors to account for the fund in that court.

A testatrix left a will which, after providing for the payment of her debts, contained a specific devise of certain real estate and a bequest of the interest of the sum of $1,500, and a direction to the executors to erect a monument. It then contained a clause in the following words: "And I also give power and

authority to my executors to sell any and all of my real estate either at public or private sale, whenever in their judgment they may deem for the best interest of my estate, and to give good and sufficient deed or deeds or conveyancy of the same." Then followed a residuary clause.

The testatrix left less than $3,000 in personalty, and her debts amounted to nearly $9,000. The will was made about two years before her death, and there was apparently no change in her pecuniary circumstances from the date of the will to the time of her decease. The testatrix left a large residuary estate, ample to discharge any debt or legacy without recourse to the specific devise.

*Held,* that it would be assumed that the testatrix knew her own circumstances and intended that both the debts and legacies should be paid, and that she foresaw that her personalty was insufficient for either purpose, and that to raise the necessary funds some of her real estate must be sold;

That the devise of the residuary estate was immediate, and the power of sale granted to the executors was to be exercised for the payment of both debts and legacies;

That had, however, the natural effect of such power of sale been to break up the general scheme of disposition of the realty, the power of sale would be held to be limited to a sale for the benefit of the devisees.

APPEAL by Henry B. Bolton and another, executors of the last will and testament of Ann Bolton, deceased, from a decree of the Surrogate's Court of the county of Westchester, entered in the office of the Westchester County Surrogate's Court on the 16th day of March, 1894, settling and allowing the account of the said executors as adjusted and filed.

*Alex. Thain,* for the appellants.

*James R. Marvin,* for the respondents.

CULLEN, J.:

This is an appeal from a decree of the surrogate of Westchester county determining the accounts of the appellants as executors. The substantial controversy is whether, under the will of the appellants' testatrix the power of sale given the executors may be exercised for the payment of debts.

The will is as follows:

"In the name of God, Amen: I, Ann Bolton, of town and county of Westchester and State of New York, being of sound mind and memory, and considering the uncertainty of this frail and transitory life, do, therefore, make, ordain, publish and declare this to be my last will and testament. That is to say: *First,* after all my

lawful debts are paid and discharged, I give and bequeath to my daughter Catherine E. Bolton all my household furniture, beds and bedding, and my silver and plated ware, and all my clothing.

"*Secondly.* I give, devise and bequeath to my son Henry B. Bolton the house and lot where he now resides in the town of Westchester.

"*Thirdly.* I authorize and direct my executors to invest the sum of fifteen hundred dollars on good security, and to pay the interest and income to the trustees of the Methodist Episcopal Church at Bronxdale, in the town and county of Westchester, for the support of said church; and I also authorize and direct my executors, in case I should not do so before my death, to expend a reasonable sum in erecting a monument and putting in order the family cemetery at Woodlawn; and I also give power and authority to my executors to sell any and all of my real estate, either at public or private sale, whenever in their judgment they may deem for the best interest of my estate, and to give good and sufficient deed or deeds or conveyancy of the same.

"*Fourthly.* I give, devise and bequeath all my estate, both real and personal, not hereinbefore bequeathed, to my children, Henry B. Bolton, Thomas Bolton, John W. Bolton, Mary A. Littlewood, Sarah L. Myers, Emily B. Norris and Catherine E. Bolton, and my adopted son, William H. Birchall, to be divided equally between them, share and share alike. Likewise I make and constitute and appoint my sons Henry B. Bolton and Thomas Bolton to be executors of this my last will and testament, hereby overlooking all former wills by me made.

"In witness whereof I have hereunto subscribed my name and affixed seal the sixth day of April, in the year of our Lord one thousand eight hundred and eighty.

"ANN BOLTON.

"Witness present:
        "HENRY H. BOLTON.
        "SARAH I. BOLTON."

The preliminary point made by the appellants, that the contestants having once insisted that the executors could not bring the fund realized by the sale of the realty into the Surrogate's Court, and there account for it, and in consequence thereof the item having been withdrawn from the account, were estopped from afterward

compelling the executors to account for the fund in that court, is plainly without merit. The contestants were wrong in their original contention, and it was so held in an action in this court for partition. They have received no part of the fund, and there is, therefore, nothing to estop them from proceeding now in accordance with what has been held to be the law, even against their contention.

The learned surrogate has held that the fund should be distributed as real estate, and that it was not applicable to the debts of the testatrix. The question is not free from doubt, but we think that this conclusion was erroneous. The case is very similar to that of *Matter of Gantert* (136 N. Y. 106). In both cases the question is not whether the debts are charged on the real estate, but whether the power of sale is given for the purpose of paying debts. In this respect the cases differ from that of *Matter of Rochester* (110 N. Y. 159).

It is found by the surrogate that the testatrix left less than $3,000 in personalty and that her debts amounted to nearly $9,000. The will was made about two years before the death of the testatrix. There is nothing to show that there was any change in her pecuniary circumstances from the date of the will to the time of her decease. By the will she gives $1,500 to be invested for the benefit of the church, and also directs the expenditure of a reasonable sum for erecting a monument, and putting in order the family cemetery. Immediately following these directions, and in the same clause of the will, is the grant of the power of sale. We should assume that the testatrix knew her own circumstances, and intended that both the debts and legacies should be paid; that with such knowledge she foresaw that her personalty was insufficient for either purpose, and that to raise the necessary fund some of the real estate must be sold. This conclusion is strengthened when we find the power of sale directly following the legacies. The learned judge distinguished the present case from the *Gantert* case by what he deemed a fatal difference, that in this will there is found a specific devise to the son. The surrogate overestimated the effect of this difference. In the opinion in the *Gantert* case Judge MAYNARD says: "If the testator has specifically devised designated portions of his realty, or impressed them with separate trusts, the presumption is very strong and usually controlling that he did not intend that these dispositions of his property

should be overturned by the exercise of a general power of sale. A direction to sell for the payment of debts cannot be implied in such cases, because in order to sustain the structure of the will there must be implied a direction not to sell for such a purpose."

But the devise of a single piece out of her large realty does not necessarily fall within the rule stated by the learned judge. If the effect of the power would naturally be to break up the general scheme of disposition of the realty, the case would fall within the principle of *Matter of McComb* (117 N. Y. 378), and the power of sale be held limited to a sale for the benefit of the devisees. Here there was a large residuary estate, ample to discharge any debt or legacy without recourse to the specific devise. The devise of the residuary estate is immediate, and there would seem no reason why a power of sale should be given to be exercised for the benefit of those devisees. We are of opinion that in the will before us the power of sale was to be exercised for the payment of both debts and legacies.

The decree of the surrogate should be reversed, and the case remitted for further proceedings in accordance with this opinion.

BROWN, P. J., and DYKMAN, J., concurred.

Decree of surrogate reversed; case remitted for further proceedings in accordance with opinion.