## CITY OF FORT WORTH, for Use of WEST TEXAS CONST. CO., v. WISEHART et al.

### No. 12209.

Court of Civil Appeals of Texas. Fort Worth.

June 28, 1930.

Rehearing Denied Oct. 4, 1930.

W. W. Wilkinson, R. E. Rouer, and Goree, Odell & Allen, all of Fort Worth, for appellant.

Simpson, Collins & Moore and Leo Brewster, all of Fort Worth, for appellee.

DUNKLIN, J.

On May 22, 1923, a contract was awarded by the city of Fort Worth to the West Texas Construction Company for the raising, filling, paying, and curbing of certain portions of West Seventh street in the city of Fort Worth. The city undertook such improvements of the street under and by virtue of provisions in its charter, and thereafter on September 4, 1923, the board of commissioners of the city of Fort Worth levied assessments of $313.69 against lots 6, 7, and 8 in block 1 of Van Zandt Hillside addition to the city, which abutted on one side of West Seventh street where the paving was to be done, and also against M. A. Wisehart and E. W. Wisehart as the owners of said property. On February 26, 1924, the city of Fort Worth issued to the West Texas Construction Company three certificates of special assessments for said improvement each of which contained the recital "that all proceedings with reference to making such improvement have been regularly had in compliance with the law, the Charter of said City, and the terms of this Certificate, and that all prerequisites to the fixing of the lien and claim of personal liability evidenced by this certificate have been performed. That said improvement has been completed by said company, in compliance with the terms of said contract, and was accepted by said city on the 26th day of February, 1924."

The certificates stipulated that the assessment so made should be payable to the West Texas Construction Company, or its assigns, in three equal installments, one within 30 days after February 26, 1925, one, one year after said date, and one two years after said date, with interest from date at the rate of 8 per cent. per annum, and with the further provisions that, if default should be made in the payment of any installment at maturity, then the legal holder of the certificates, should have the opportunity to declare the whole indebtedness due with the right to claim reasonable attorney's fees as cost for collection. The certificates further provid-

ed that the city should have the power to institute suit for the benefit of the holder for the collection of the debt evidenced by the certificates.

On March 24, 1926, the city of Fort Worth, for the use and benefit of the West Texas Construction Company, instituted this suit against M. A. Wisehart and E. W. Wisehart to collect the debts evidenced by those certificates and also to enforce a lien on the lots owned by them to secure the payment of the indebtedness; default having been made in the payment of said certificates. On December 9, 1927, E. W. Wisehart, whose full name was Enoch Wesley Wisehart, died, leaving a last will and testament which was duly probated in the county court of Tarrant county on March 15, 1928, and, by the terms of the will, M. A. Wisehart, his surviving wife, whose full name is Mary Albright Wisehart, was named as executrix without bond, and with the further provision that no action should be had by the probate court other than the probating of the will and filing of inventory and appraisement of the estate.

Thereafter, and on July 3, 1928, the plaintiff filed an amended petition against M. A. Wisehart alone, both as independent executrix and as sole beneficiary of the will, seeking a recovery of personal judgment against the estate of E. W. Wisehart and M. A. Wisehart individually, and for foreclosure of the alleged lien on the property, and for the payment of plaintiff's claim out of E. W. Wisehart's interest in said three lots, "as provided in said will."

The trial of the case was before the court without the aid of a jury, and judgment was rendered, awarding a recovery in favor of the plaintiff for the use and benefit of West Texas Construction Company, for the amount of debt sued for against M. A. Wisehart, executrix of the estate of E. W. Wisehart, deceased, but denying plaintiff any judgment against M. A. Wisehart personally for said debt. The judgment also decreed that plaintiff was not entitled to its alleged lien on the property, and that it should be denied its prayer that an undivided half interest in those three lots should be subjected to the payment of plaintiff's debt under the provisions of the will of E. W. Wisehart. From that portion of the judgment denying plaintiff the right to subject an undivided, one-half interest in the property belonging to E. W. Wisehart at the time of his death to the payment of the debt sued for, plaintiff has prosecuted this appeal.

The will of E. W. Wisehart reads as follows:

"State of Texas, County of Tarrant.

"I, Enoch Wesley Wisehart of the County of Tarrant and State of Texas, being in sound mind and disposing mind and memory, and being desirous to settle my worldly affairs while I have strength to do so, do make this my last will and testament, hereby revoking all others heretofore made.

"First. I desire and direct that my body be buried in a decent and christianlike manner suitable to my circumstances and conditions in life.

"Second. I desire and direct that my just debts be paid out of my estate without delay.

"Third. It is my will and desire that all of my property, both real and personal, I may die seized and possessed of, or may be entitled to, after the payment of my just debts, together with all the expenses incident to the Probate of this will, shall pass to and vest in fee simple in my beloved wife, Mary Albright Wisehart, and after the payment of all of my just debts, I give and bequeath and devise to my beloved wife, Mary Albright Wisehart, the remainder of all the property; I may own or be interested in or may be entitled to at the time of my death, as well as all of the property of every nature kind, description whatsoever that I now own or that I may be entitled to and it is my express desire and will that the title of all such property that I now own or that I may be entitled to at my death, shall upon my death immediately vest and become and be property of my beloved wife, Mary Albright Wisehart, in fee simple to manage, sell or dispose of as she may wish or see proper.

"Fourth: I hereby constitute and appoint my beloved wife, Mary Albright Wisehart, Executrix of this, my last will and testament and direct that no bond or security be required of her as executrix.

"Fifth: It is my will that no other action be had in the County Court in the administration of my estate than to prove and record this will and return an inventory and appraisement of my estate and list of claims.

"In testimony whereof I have hereunto set my hand this 7th day of June, A. D. 1924.
                    "Enoch Wesley Wisehart."

Attorneys for both parties filed the following written agreement:

"That E. W. Wisehart and M. A. Wisehart were husband and wife, and so lived from the time they were married until the death of E. W. Wisehart about December, 1927. That in about 1918 they acquired lots six (6), seven (7) and eight (8) in Block one (1) Van Zandt Hillside Addition to the city of Fort Worth, Tarrant County, Texas, and moved thereon and had at all times continuously claimed, occupied and used said property as their homestead as man and wife until the death of E. W. Wisehart, and the said M. A. Wisehart continued to live upon and occupy said property as her home after the death of her husband, and was so occupying same on the date of trial of this case. That at the time of the purchase of said lots by

them and their moving on same and making them their homestead the said three lots did not exceed the value of $2,500.00.

"That on the date of levying the assessments sued on by plaintiff, on to wit: September 4th, 1923 the said property was the homestead of E. W. Wisehart and wife, M. A. Wisehart. That said property was their community property and constituted all the real estate owned by them or either of them. That all the personal property they or either of them owned at the time of his death was the household effects, which were of small value; a personal note in the sum of about $200.00 owing them, which was practically worthless and uncollectable; and a small sum in cash but not enough to pay the funeral expenses of the said E. W. Wisehart.

"That the only estate left by E. W. Wisehart, deceased was his undivided one half interest in said real estate, their homestead, and the household effects and the personal property, note and cash as above described.

"The defendants did not sign any contract or other instrument in writing, creating or purporting to create, a Mechanic's lien on the premises; but refused to execute such an instrument."

Section 50 of article 16 of our Constitution reads as follows: "The homestead of a family shall be, and is hereby, protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing; with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

Section 52 of article 16 of our Constitution reads as follows: "On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same."

It is a settled rule of decision in this state that, under the provisions of our Constitution above cited and statutes enacted in keeping therewith, the homestead of a decedent is exempted from the payment of all debts except those due for purchase money of the property, taxes due thereon, and improvements constructed thereon under contract in writing executed and acknowledged by the husband and wife in the same manner as required of deeds of conveyance. The following three decisions of our Supreme Court, all written by Chief Justice Cureton, definitely settle that point: Cline v. Niblo, 117 Tex. 474, 8 S.W.(2d) 633, 66 A. L. R. 916; Johnson v. Hampton, 117 Tex. 580, 8 S.W.(2d) 640; Ward v. Hinkle, 117 Tex. 566, 8 S.W. (2d) 641.

While, under charter provisions of the city of Fort Worth, E. W. Wisehart became personally liable for the debts indicated by the assessment certificates, yet, in the absence of the execution by himself and wife of any contract for the paving adjoining the property in controversy, no lien was created on the property to secure payment of the assessments.

Hence the only question to be determined is whether or not E. W. Wisehart's one-half interest in the property should be subjected to the payment of those certificates, by reason of the provisions in the will that all the testator's debts should be first paid out of his estate and that the balance of his estate remaining after such payments should be the property of his wife, Mrs. M. A. Wisehart; in other words, whether or not by the terms of the will the testator intended that the certificates should be a charge upon his one-half interest in the lots to be first satisfied before his wife could acquire title thereto and thereby in effect, to make a devise of such an interest in the property as might be necessary to satisfy the improvement certificates, with a subordinate devise to his wife of so much of the property as might remain after the satisfaction of said certificates.

All the authorities agree that in the interpretation of wills, a more liberal rule of construction will be resorted to than in the construction of deeds of conveyance of real estate or other written instruments. See Redfield on Law of Wills (4th Ed.) § 420; Schouler on Wills (2d Ed.) § 461.

In 28 R. C. L., beginning on page 211, there is an instructive discussion of the question of the proper construction of wills, with a multitude of decisions cited from courts throughout the country. As shown in that as well as in all other authorities, the general rule is that the intention of the testator as evidenced by the terms of the instrument

when construed as a whole, is paramount, and must be given controlling effect, and that recourse cannot be had to extrinsic evidence to prove such intention except when a latent ambiguity arises in the application of the terms of the will to the subject-matter of the devise or to the beneficiaries thereof. But the decisions cited show that in many instances, the courts adopt quite a liberal rule in permitting proof of a variety of extrinsic facts and circumstances, under which the will was executed, as an aid to the discovery of the intention of the testator who can no longer speak with respect to those matters; all upon the theory that such evidence is necessary to clear up some latent ambiguity in the instrument as to those issues. By reason of the ever-varying facts with different shades of bearing on the terms of different wills, it would be difficult to say that any particular one of such decisions should be given controlling effect in the construction of another will, but they are strongly illustrative of the liberal rule of construction of wills already referred to.

In Clarke v. Johnston, 18 Wall. 493, 502, 21 L. Ed. p. 904, the Supreme Court of the United States had this to say:

"Very few classes of questions are more frequent or more perplexing in the courts than the construction of wills. If rules of construction laid down by the courts of the highest character, or the authority of adjudged cases, could meet and solve these difficulties, there would remain no cause of complaint on that subject, for such is the number and variety of these opinions that every form of expression would seem to be met. Especially is this true of the question whether a vested remainder in interest is created after a particular estate, or whether the first taker has a fee simple or full ownership of the property devised. And, in point of fact, when such a question arises the number of authorities cited by counsel, supposed to be conclusive of the case in hand, is very remarkable. Unfortunately, however, these authorities are often conflicting, or arise out of forms of expression so near alike, yet varying in such minute shades of meaning, and are decided on facts or circumstances differing in points, the pertinency of which are so difficult in their application to other cases, that the mind is bewildered and in danger of being misled. To these considerations it is to be added that of all legal instruments wills are the most inartificial, the least to be governed in their construction by the settled use of technical legal terms, the will itself being often the production of persons not only ignorant of law but of the correct use of the language in which it is written. Under this state of the science of the law, as applicable to the construction of wills, it may well be doubted if any other source of enlightenment in the construction of a will is of much assistance, than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself."

To the same effect, see, also, 40 Cyc. 1399.

In Cross v. Benson, 68 Kan. 495, 75 P. 558, 562, 64 L. R. A. 560, it appeared that H. C. Cross, the decedent, left a will directing that all his debts and funeral expenses should be first paid, and that, after such payment, all his property should go to his widow, Mrs. Sue S. Cross. A portion of the estate consisted of the homestead of the decedent and his surviving wife, which the creditors sought to subject to the payment of their debts under and by virtue of the provision of the will directing that they should be first paid. The case was decided by the Supreme Court of Kansas, and the following is taken from the opinion of the court on the point so raised:

"It is asserted that since Sue S. Cross elected to take the property in question under the terms of a will, in which a request that the testator's debts and funeral expenses be first paid was expressed, she held it subject to the payment of such charges. In England the validity of the rule that a general direction for the payment of debts creates a charge upon real estate is now doubted. 'Such, then, is the long line of cases in which it has been held that a general direction by a testator that his debts shall be paid charges them upon his real estate. Though certainly in some of the wills there were expressions which might be fairly considered to sustain the construction independently of any such doctrine, it seems to be generally admitted that the courts have allowed their anxiety to prevent moral injustice by the exclusion of creditors, "and that men should not sin in their graves," to carry them beyond the limits prescribed by established general principles of construction.' Jarman on Wills, § 1397. In Bigelow on Wills, 317, it is said: 'Indeed, as a new question, there would be ground for question whether a direction to pay debts and legacies should be deemed a charge upon land devised.' In Re Rochester, 110 N. Y. 159, 17 N. E. 740, it is said: 'Payment of debts will not be charged upon a devise of real estate without clear evidence of such an intent in the will. The intention may not be presumed merely from the use of formal words, or the presence of commonly employed phrases.' Other American cases are to the same effect. Starke v. Wilson, 65 Ala. 576; Cooch's Ex'r v. Cooch's Adm'r, 5 Houst. [Del.] 540 [1 Am. St. Rep. 161]; Matter of Bingham, 127 N. Y.

296, 27 N. E. 1055; Matter of Powers, 124 N. Y. 361, 26 N. E. 940. Much more imperative and unequivocal must be the language of a will which would subject to the payment of debts that property toward which the eye of the creditor need never be turned."

That decision was followed and cited with approval by the Supreme Court of Minnesota in the case of Larson v. Curran, 121 Minn. 104, 140 N. W. 337, 339, 44 L. R. A.. (N. S.) 1177, in which the will construed likewise contained the provision that all the testator's debts should be first paid and the residue of the estate should then go to the testator's sister, who was a member of his family at the time of his death. The creditors sought to subject the homestead to the payment of his debts by reason of the terms of the .will. In denying the creditors' suit, it was said in the opinion of the court:

"The direction to 'pay all my just debts out of my estate' is a purely formal phrase, commonly employed and really superfluous. To give it the meaning that it amounts to a direction by the testator that the homestead devised to his sister shall be charged with the payment of his debts would be to attach altogether too much significance to a well-worn stereotyped expression that really means nothing, any more than do the very common assertions by a testator that he is of sound mind, and aware of the uncertainties of this frail and transitory life.

"The case of Cross v. Benson, previously cited, is strongly in point, and not distinguishable from the case at bar. After quoting from Hamilton v. Smith, 110 N. Y. 159, 17 N. E. 740, the rule of that and the other cases, herein referred to, that payment of debts will not be charged upon a devise of real estate without clear evidence of such an intent in the will, and that the intention may not be presumed merely from the use of formal words, or the presence of commonly employed phrases, the court says: 'Much more imperative and unequivocal must be the language of a will which would subject to the payment of debts that property towards which the eye of the creditor need never be turned.' The fact that in Cross v. Benson there was a wife and children to whom the homestead would have descended in the absence of a will is not sufficient to distinguish that case from this in principle, or to detract from its authority. Our conclusion is that the testator did not in his will, construed as a whole, indicate an intention to subject his homestead to the payment of his debts."

The following is quoted from **13 R. C. L.** 647: "Where a decedent disposes of his homestead by his last will, the devisee takes it free from claims of creditors of the decedent, unless the testator clearly indicates an intention that the homestead shall be liable to the payment of his debts; and a general direction by the testator in the will to pay all his just debts out of his estate, followed by the devise of the residue, is not sufficient to indicate such intention. This rule is founded on the principle that the use of merely formal phrases will not make a devise of a homestead subject to the payment of the testator's debts. To do this, the language employed must be unequivocal and imperative."

■ The judicial interpretation thus given to the formal phrase to the effect that all the testator's debts should be first paid, when a creditor relies thereon to defeat title to a homestead devised to a member of the testator's family, we believe to be sound, and, from all the facts and circumstances recited in the agreed statement of facts copied above, we conclude that, by virtue of the will of her husband, Mrs. M. A. Wisehart acquired title to his undivided one-half interest in the property in controversy free of appellee's claim of right to have it subjected to the payment of the improvement certificates.

Appellants have cited Haldeman v. Openheimer, 103 Tex. 276, 126 S. W. 566, and Fenwick v. Chapman, 9 Pet. 461, 9 L. Ed. 193. In the first case cited it was held that directions in a will that certain legacies be first paid and that the remainder of the estate should go to the wife of the testator had the effect to charge the estate with the payment of such legacies before title would vest in the wife. In the second case cited it was held that the effect of a provision in a will directing that the debts owing by the testator be first paid had the effect to charge real estate and personal property there devised with the payment of such debts before full title could vest in the devisee. No doubt those decisions announce a correct general rule of law, but those cases are distinguishable from the suit at bar in that the question of right of the devisee to hold the property as a homestead as against such debts independently of the will were not involved. Nor were the wills made under such circumstances and conditions as was the. will in this suit.

For the reasons noted, the judgment of the trial court is in all things affirmed.