(5 Misc. Rep. 475.)

## In re BOLTON.

(Surrogate's Court, Westchester County. November, 1893.)

CONVERSION—POWER OF SALE IN WILL.

Testatrix gave certain legacies after payment of debts, and devised- one parcel of realty. She then authorized her executors to sell the realty as in their judgment might be best for the estate, and gave all the residue of her estate not before disposed of to her children equally. The debts of testatrix exceeded her personal estate, but it did not appear that she knew that fact. *Held*, that it was not intended by the will to- convert the realty into personalty.

Accounting by Henry B. Bolton and Thomas Bolton, as executors of the will of Ann Bolton, deceased. The material provisions of the- will are as follows: First, a bequest, after all lawful debts are discharged, of certain personal property to Catherine E. Bolton, a daughter of testatrix; second, a devise to Henry B. Bolton of a house and lot in which he was then living; third, a bequest of $1,500 for the support of a church. Plaintiff also gave her executors power to sell and convey any and all of her real estate whenever in their judgment they might deem it best for the interests of the estate; and, finally, she gave all the residue of her estate not otherwise disposed of to her children, to be divided among them. equally.

A. O. Salter and Alex. Thain, for executors.
James R. Marvin, for contestants.

COFFIN, S. This is an accounting by the executors for the proceeds of sales of real estate made by them under the provisions. of the will, amounting to upwards of $40,000, and the most important question to be considered is whether any portion of this. sum, as far as necessary for that purpose, may be applied towards the payment of the debts of the deceased. It is claimed on behalf of the executors that the terms of the will, taken in connection with the pecuniary condition of her affairs, indicate an intention to charge the lands with the payment of debts, and thus operate- as an equitable conversion of the real estate into legal assets for-

that purpose, which is denied by the contestants. It appears that the personal estate, after the deduction of funeral expenses and the expenses of administration, did not exceed some $1,200 or $1,500, and the debts amounted to about $8,000 or $9,000. By an accounting by the executors of the personal estate, recently had, a balance, consisting chiefly of money paid on account of debts in excess of assets, was found to be $2,472.11, which is a part of the whole of the debts as above stated. The real estate consisted of three parcels, worth, perhaps, at testatrix's death, some $20,000 to $25,000, but much enhanced in value at the time of sale of two parcels; that parcel devised to Henry B. Bolton, remaining unsold. Under this state of facts it is claimed that this case comes within the principle decided in Re Gantert, 136 N. Y. 106, 32 N. E. 551, in which case much stress is laid upon the fact that the testator must have known that the debts exceeded the personal property by about $29,000, and his realty was worth, clear, about $7,300. While the facts here are, in some respects, stronger than in that case to sustain the view there taken, yet another exists calculated materially to have changed the result reached. Here the legacies and devises were given after the debts were paid and discharged, and the residuum, personal and real, was given to her children and adopted son, share and share alike. While these provisions would have probably been regarded as strengthening the view there taken, as indicating the intention to have the realty equitably converted into assets for that purpose, yet each one, standing alone, has been declared to have no such significance. As to the first, see In re City of Rochester, 110 N. Y. 159, 17 N. E. 740; as to both, see Kinnier v. Rogers, 42 N. Y. 531. The intention of the testatrix, as ascertained from the will, and possibly from surrounding circumstances, must govern. The chief, and it seems to me a fatal, distinction between this case and that of Gantert, 136 N. Y. 106, 32 N. E. 551, is that here there was an absolute devise of a portion of the real estate to Henry B. Bolton. The learned judge who delivered the opinion in that case holding that there was a conversion, takes occasion to say:

"If the testator has specifically devised designated portions of his realty, or impressed them with separate trusts, the presumption is very strong, and usually controlling, that he did not intend that these dispositions of his property should be overturned by the exercise of a general power of sale. A direction to sell for the payment of debts cannot be implied in such cases, because, in order to sustain the structure of the will, there must be implied a direction not to sell for such a purpose. No difficulty of this kind is in the way here."

In creating the power to sell the real estate in this case, that devised specifically was not excepted from its operation, nor can it be implied. In terms it applies to all. We are scarcely justified in saying that the testatrix knew the situation of her pecuniary affairs,—how much personal estate she had, or the amount of the debts she owed. Few widowed women have much knowledge of such matters. Had she possessed an approximate conception of her condition in that respect, it is not probable that she would have

made the bequests of the household furniture, and for the benefit of the church, which together amounted to about the sum of the inventory, which was $2,010. So that the case differs from that of Gantert in this respect also. After much consideration and the examination of authorities, the conclusion is somewhat reluctantly reached that no such charge or equitable conversion was intended or made. Hence the proceeds of the sales must be regarded as real estate for the purposes of distribution. Consequently they are not subject to the payment of the debts of the deceased remaining unpaid, or that have been paid by the executors, and which they seek to recoup; and the time has long since expired within which the lands could have been so subjected by proceedings in this court, nor to any expenses incurred by the executors in disposing of the personal estate or the accounting therefor. In the view taken, the fee of the realty was in the devisees, subject only to the exercise of a mere naked power conferred upon the executors. They have exercised the power, and, having received the proceeds, which are now brought in for distribution, they are not only entitled to their commissions, but expenses incident thereto, and of defending their rights under the power when assailed or interfered with by whomsoever. From the testimony, it strikes me that, considering the various litigations they were forced into in defense of the obligations they were under to discharge their duty, they should be allowed the sum of $2,000 over and above what their counsel received on the dissolution of the injunction; that the services of their counsel were varied, made vexatious, if not often embarrassing and difficult, by the contestants. No lawyer is fully competent to testify with any degree of accuracy to the value of the services of another. The mere manual labor of drawing up papers, making up briefs, etc., is but a tithe of the work a lawyer does, and evidence may be given on those subjects; but the thought he bestows, his care and anxiety, are not on the surface, and can only be the subjects of a rough guess, perhaps founded on a limited experience drawn from his own habits of thought and mode of life. Although the taxes and water rent may have properly been collected from the devisees, as owners, yet they had to be paid, in order to follow up the sales with clear titles. Now they will come out of the fund, which, in effect, amounts to the same thing. Under the circumstances disclosed, $750, being the amount of the commission paid to broker Berrian, seem to have been justified, and is allowed; as also the $145.75 paid to the broker on the sale of the Bronxdale property. Costs are allowed to the executors only. Decree accordingly.