SARAH L. MYERS and MARY A. LITTLEWOOD, Respondents, *v.*
THOMAS BOLTON and Others, Appellants, Impleaded with JOHN
W. BOLTON and Another.

*Accounting — when some of several tenants in common are in possession of the land,
the relation of landlord and tenant exists — their liability to their co-tenants.*

In an action brought to compel an accounting for moneys collected and received
from property owned by the parties to the action as tenants in common, it
appeared that, in 1880, Ann Bolton was the owner of à tract of land at Bronx-
dale, upon which were valuable mills used for manufacturing purposes; she
was also the owner of several houses at Bronxdale.    Prior to 1880, she leased
the right to cut ice from a pond on her land to one Chandler, who enjoyed that
privilege, and by whom the stipulated rent was paid, until July 9, 1889.    In
March, 1880, the defendants, Thomas Bolton, Henry B. Bolton, who were sons,
and William H. Birchall, who was an adopted son of Ann Bolton, were partners
under the firm name of the Bronx Company, and Ann Bolton leased to the firm
a portion of the said tract of land for five years, with the privilege of extending
such lease for ten years more at an annual rent payable yearly.    Included in
these premises leased to the Bronx Company was the pond previously leased to
Chandler, who, from the date of the lease to the death of Ann Bolton, paid the
rent therefor to the Bronx Company, by which it was credited to Mrs. Bolton.
In 1882, Ann Bolton died seized of all this property.    She left a will wherein she
devised and bequeathed the remainder of her estate, which included the mill
property, to her seven children and to her adopted son, and nominated Henry
B. Bolton and Thomas Bolton as executors, giving them power to sell real
estate.    From the death of the testatrix until July, 1889, one of the houses left
by her was rented to and occupied by William H. Birchall.    In the last-men-

tioned year the greater part of the real estate left by the testatrix was condemned by the city of New York for the purpose of establishing Bronx park; damages were awarded, paid and divided among the devisees according to their respective interests.

In 1887, four of the buildings on the property leased to the Bronx Company were destroyed by fire. The Bronx Company received on account thereof certain insurance moneys and thereafter erected new buildings at a cost of $5,501.05, more than the sum received for the insurance.

*Held,* that upon the death of the testatrix the title to her real estate vested in the eight devisees, subject to be divested by the execution of the power of sale contained in the will, and until the power was executed the devisees were entitled to the possession of the realty subject to the then existing leases, and were entitled to collect the rents from the lessees and receive the profits from the portion not leased for their own use;

That the executors, as such, had no power to collect the rents accruing after the death of the testatrix on the leases made by her, or to receive the income of that portion of the realty not held under such leases.

It further appeared that the Bronx Company was the agent of the testatrix in her lifetime for the collection of rents from the occupants of the property, and was accustomed to credit her account with the rents due from the firm. After her death the company credited "Ann Bolton's estate" with the rents due from the firm in an account kept with the estate, and also credited to the estate in that account the rents collected from other tenants occupying the land of the estate, all of which was done with the acquiescence of all the devisees.

*Held,* that by this course of dealing the members of the firm became liable to the other devisees for their just proportion of all rents collected after the death of the testatrix, subject to the legal charges for moneys paid out;

That inasmuch as the Bronx Company occupied a large share of the realty, from the death of the testatrix until it was taken by the city of New York, under a lease by which the firm agreed to pay a stipulated rent, the account should not have been made up upon the theory that the parties to the action were tenants in common, and that consequently none of them were liable to the others for use and occupation of the realty, but that the members of the firm were bound to account to the owners of the property under the rules applicable to cases between landlord and tenant;

That the firm could not charge for improvements or betterments made by it, nor for expenses incurred for the restoration of the buildings in excess of the amount received for insurance;

That so far as the remainder of the realty, not covered by the lease to the Bronx Company, was concerned, the defendants were liable to account to their co-tenants upon the principles applicable to cases between tenants in common; that the money having been received by the firm, all the partners knowing the source from which it came were liable to account therefor to the persons entitled thereto;

That Birchall should be charged for the rent of the house occupied by him, he having agreed to pay a stipulated rent for the house which was credited in the

account of the firm with the estate as received; that he was liable to his co-tenants for rent which he had agreed to pay for any part of the property;

That said firm should be charged with the amount received from Chandler although the pond from which the ice was cut was on the land leased to the Bronx Company, it being plain from the course of dealing between Ann Bolton in her lifetime and the firm that it was understood between them that the rent due from Chandler did not belong to the company but to her, and as after her death the rent was collected by the firm from Chandler and credited to the estate.

APPEAL by the defendants, Thomas Bolton and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 24th day of April, 1895, upon the report of a referee.

*Alexander Thain,* for the appellants.

*James R. Marvin,* for the respondents.

FOLLETT, J. :

This action was begun April 29, 1889, to compel the defendants, Thomas Bolton, Henry B. Bolton and William H. Birchall, to account for moneys collected and received from property owned in common by the parties to the action. John W. Bolton and Catharine E. Bolton were joined as defendants because they refused to be joined as plaintiffs, but no judgment was demanded or rendered against them. All of the defendants served a joint answer, and the referee in his report stated the accounts as between all of the parties to the action, finding that Sarah L. Myers, Mary A. Littlewood (plaintiffs), John W. Bolton and Catharine E. Bolton (two of the defendants) were each entitled to recover of Thomas Bolton, Henry B. Bolton and William H. Birchall, $3,826.49, with interest from August 1, 1894. A judgment was entered in favor of the plaintiffs for the amount found due them, but no judgment has been entered in favor of John W. Bolton and Catharine E. Bolton, or either of them. All the testimony in respect to the accounts was given by Thomas Bolton and Henry B. Bolton, two of the appellants, there was no conflict therein, and the appellants are not in a position to urge that the referee should not have believed the evidence. The only other testimony related to the value of legal services rendered upon the retainer of the defendants in matters arising

out of the estate, and was given by four attorneys, three of whom were the attorneys and counsel who conducted the trial and whose names appear on the briefs in this court. While many of the referee's findings of fact were excepted to by the appellants, none of them were challenged on the argument or are challenged in the brief, except that part of the sixth, by which it is found that Thomas Bolton and Henry B. Bolton received $1,000 from William H. Birchall for the use of a house rented to him by them. Thomas Bolton testified that the Bronx Company, hereinafter mentioned, had an account with Birchall; that the rent was charged to him in that account, and credited to the estate. Under this evidence the referee correctly found that the rent had been paid by Birchall and had passed into the hands of the three appellants who composed the firm of the Bronx Company.

The findings of fact must be accepted by this court as supported by the evidence.

In 1880 Ann Bolton was the owner of a tract of land at Bronxdale, which was divided by the Bronx river, the land on the west side being in the city of New York, and that on the east side in the town of Westchester. On this land were valuable mills used for the purpose of manufacturing. She was also the owner of several houses at Bronxdale. Prior to March, 1880, she leased to A. C. Chandler the right to cut ice from a pond on her land, for $600 per year. The lessee enjoyed the privilege, and paid the stipulated rent until July 9, 1889. In March, 1880, Thomas Bolton, Henry B. Bolton and William H. Birchall were partners under the firm name of the Bronx Company, and March 1, 1880, Ann Bolton leased to the firm a portion of the tract of land divided by the Bronx river, for five years, from March 1, 1880, with the privilege of ten years, for the annual rent of $4,500, payable yearly. The pond from which the privilege to cut ice had been previously granted to Chandler was part of the premises leased to the company, but from the date of the lease to the death of Ann Bolton the Bronx Company collected the rent from Chandler and credited it to Mrs. Bolton. September 29, 1882, Ann Bolton died, seized of all this property, and leaving Thomas Bolton, Henry B. Bolton, John W. Bolton, sons, Catharine E. Bolton, Emily B. Norris, Sarah L. Myers and Mary A. Littlewood, daughters, her only heirs and

next of kin. William H. Birchall, a nephew, had been adopted by her, and reared in the family as her son. She left a will, by which she bequeathed to her daughter Catharine her household furniture and clothing, devised to Henry B. Bolton a house and lot, and bequeathed $1,500 to her executors, to be invested, and the income to be paid to the trustees of a church. She devised and bequeathed the remainder of her estate to her seven children and to her adopted son, to be divided equally among them. She nominated her sons Henry B. and Thomas Bolton as executors, giving them power to sell and convey any or all of her real estate at public or private sale. November 20, 1882, the will was duly admitted to probate by the Surrogate's Court of the county of Westchester, and letters testamentary thereon were issued to the executors therein nominated, who immediately entered upon the discharge of their duties, and have ever since continued to act as executors. From the death of the testatrix until July 9, 1889, one of the houses left by her was rented to and occupied by William H. Birchall, for $150 per year. In 1887 Emily B. Norris died intestate, leaving no descendants, but leaving a husband, to whom letters of administration on her estate were granted October 11, 1889, and November 22, 1889, he assigned his wife's share of the rents arising from the estate of Ann Bolton to Thomas Bolton and Henry B. Bolton. On the 9th of July, 1889, the greater part of the real estate left by the testatrix was condemned by the city of New York, under chapter 522 of the Laws of 1884, for the purpose of establishing Bronx park and parkways, for which $267,324.40 damages were awarded, paid and divided among the devisees according to their respective interests. In April, 1887, four of the buildings on the property leased to the Bronx Company were destroyed by fire, on account of which $28,000 was received by the company from insurance companies for the loss. Thereafter the firm erected new buildings at a cost of $5,501.05 more than the sum received for insurance.

Upon the death of the testatrix the title to her real estate vested in the eight devisees, subject to be divested by the execution of the power of sale contained in the will, and until the power was executed the devisees were entitled to the possession of the realty, subject to the then existing leases, and were entitled to collect the rents from the lessees and receive the profits from the portion not leased

for their own use. The executors, as such, had no power to collect the rents accruing after the death of the testatrix on the leases made by her, or to receive the income of that portion of the realty not held under such leases. (*Matter of Bolton*, 5 Misc. Rep. 475; *Clift* v. *Moses*, 44 Hun, 312; affd., 116 N. Y. 144.)

The Bronx Company was the agent of the testatrix in her lifetime for the collection of the rents from the occupants of the property, and was accustomed to credit her in account with rents due from the firm. After her death the company credited " Ann Bolton's estate" with the rents due from the firm in an account kept with the estate, and also credited to the estate in that account the rents collected from other tenants occupying the land of the estate. This seems to have been done by the acquiescence of all the devisees. In this account the firm charged the estate with taxes, insurance and other expenses paid. By this course of dealing the members of the firm became liable to the other devisees for their just proportion of all rents collected after the death of the testatrix, subject to the legal charges for moneys paid out. The amount due the estate of Ann Bolton for rents collected by the firm prior to her death belonged to her executors, who have accounted therefor in the Surrogate's Court. Such rents are not involved in this suit.

The appellants insist that the accounting should have been upon the theory that the parties to this action were tenants in common, and that none of them were liable to the others for use and occupation of the realty. The error of this position arises from the fact that the Bronx Company occupied a large share of the realty from the death of the testatrix to July 9, 1889, when it was taken by the city, under a lease by which the firm agreed to pay rent at the rate of $4,500 per year. The individual members of this firm were not in possession as tenants in common of the realty covered by the lease, but the firm was in possession as tenants upon a stipulated rent, and the members of that firm must account to the owners of the property upon the rules applicable to cases between landlord and tenant. As tenants holding under a lease, the firm cannot charge for improvements or betterments made by it, nor for expenses incurred for the restoration of the buildings in excess of the amount received for insurance. Whether the policies from which the appellants received $28,000 insured the interests of all the owners or only

the interest of the firm, does not appear, but that question is not material because the appellants have not been charged with that sum, though credited with premiums paid. The remainder of the realty not covered by the lease to the Bronx Company was leased to other persons, the tenants paying rent at stipulated rates, which was collected by the company. For such rents the defendants are liable to account to their co-tenants upon the principles applicable to cases between tenants in common. The case does not show that the appellants made any improvements upon the property not covered by their lease, or that they expended any sums on account thereof which were not credited to them by the referee. It is urged that the three appellants should not have been charged for rents severally collected by the two executors, Thomas and Henry B. Bolton. This would be an unanswerable proposition had it not appeared by the evidence of the defendants themselves that the amounts so collected were paid over to the firm of which the three appellants were members. The firm having received this money, all the partners knowing the source from which it came, are liable to account therefor to the persons entitled thereto.

It is urged that Birchall should not have been charged for the rent of the house occupied by him. He was not, directly as an individual. He had agreed to pay a stipulated rent for the house, and it was credited in the account of the firm with the estate as received. Birchall is liable to his co-tenants for rent which he had agreed to pay for any part of the property.

It is urged that the referee erred in charging the appellants with the amount which they credited the estate, as received from Chandler, upon the ground that the pond from which the ice was cut was on the land leased to the Bronx Company. Although the appellants' lease did in terms cover the pond, it is plain from the course of dealing between Ann Bolton in her lifetime and the firm that it was understood between them that the rent due from Chandler did not belong to the company, but to her; and after her death the rent was collected by the firm from Chandler and credited to the estate, thus clearly showing that the rent from Chandler did not belong to the Bronx Company.

The appellants insist that the court erred in not allowing them the amount which was found due to the executors from the estate

of the testatrix on their accounting in the Surrogate's Court. To
this there are several answers: (1) The amount found due the
executors on the accounting was not established on the trial of this
action; (2) that amount, whatever it was, is not a claim in favor of
the three appellants, but it is a claim of two of the appellants in
their representative capacity; (3) this independent claim of the
executors against the estate is not set up in the answer in this
action as a counterclaim.

There is no reason for dismissing the complaint against Catha-
rine E. and John W. Bolton; no claim was made against them, and
they were made parties defendant simply because they would not
join as plaintiffs. They filed no exceptions and have not appealed.
It was not error to refuse to credit the appellants with the $1,819.63
paid by Thomas Bolton, March 31, 1887, on the bond held by Sarah
L. Bolton, for this sum had been charged in the executors' account
rendered in the Surrogate's Court, and had there been allowed to
them.

It appears that one Girsch held a mortgage upon three houses
belonging to the estate which was given by Ann Bolton in her life-
time. One of these houses was devised to Henry B. Bolton, who
with Thomas Bolton agreed between themselves that $1,500 of the
principal sum should be charged upon Henry's house and $500
should be charged upon the premises devised to the eight devisees.
This mortgage had been paid by the firm and charged on its books,
three-fourths of the sum paid to Henry B. Bolton and one-fourth of
it to the estate, according to the agreement, and the referee credited
the appellants with the amount charged by them against the estate.
In this there was no error.

After issue was joined in this action the parties stipulated that
the trial involved the examination of a long account, and that it be
referred to William M. Hoes to hear and determine, and an order
was entered. On the trial the defendants moved that the complaint
be dismissed on the ground that the causes of action set out therein
were legal and not equitable ones. An action for the recovery of
such a sum of money as may be found due on an accounting will not
be dismissed upon the trial on the ground that an action at law
might have been maintained for the recovery of the money
demanded. An action for the recovery of this sum, either at law

or through an accounting, required the examination of a long account and could not be tried before a jury. Under the reformed procedure such actions are not dismissed because erroneously named or because allegations appropriate to a legal cause of action are contained in the complaint in a suit for equitable relief.

The action seems to have been carefully and fairly tried and disposed of by the learned referee, and we find no error in the record calling for the reversal of the judgment, which should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.