### WILSON *v.* BOYCE.

1. Where the Cairo and Fulton Railroad Company accepted certain bonds issued under an act of the General Assembly of the State of Missouri, which declared that they should "constitute a first lien and mortgage upon the road and property" of the company, — *Held*, that the word "property" included all the lands of the said company, and that a valid lien on them was created by the act.
2. The title of a subsequent purchaser from the company of its lands is destroyed by the sale of them under the mortgage.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

This was an action of ejectment. The controversy turned upon the effect of an act of the General Assembly of the State of Missouri, under which bonds were issued to and accepted by the Cairo and Fulton Railroad Company. The act declared that the bonds should constitute a first lien and mortgage upon the road and *property* of that company.

Subsequently to the receipt of the bonds, the company executed a deed of trust upon her lands which had been granted by Congress to aid in the construction of the road. The plaintiff claimed under this deed.

The company failed to pay the interest on the bonds; and its lands were sold by the State, pursuant to the power contained in the act. The defendant became the purchaser of the demanded premises.

The court below held that the purchaser under the foreclosure

of the statutory mortgage held the better title, and that the word "property" embraced the lands owned by the company.

*Mr. Isaac W. Scudder* and *Mr. H. A. Clover* for the plaintiff in error.

A construction which would extend the lien of the State over the lands not in any way connected with the operation of the railroad, so as to divest the title of the plaintiff in error, a *bona fide* purchaser for value, is against the purpose and design of the grants made by Congress to Missouri, and also against the clear intention of the legislature of that State when it transferred the lands to the Cairo and Fulton Railroad Company.

These grants were made that the lands embraced by them should be sold, and the proceeds applied to the construction of a work of internal improvement.

Such plans have frequently been developed by the legislation of Congress, and also of those Western States where large tracts of public lands there situated have been granted for railroads and other highways.  9 Stat. 466; Poor's Manual of Railroads for 1871, 1872, 306, 413; 10 Stat. 8; id. 35, 155.

Every act of Congress granting not merely a right of way, but lands, provides that they shall be applied to the construction of the railroad, and to no other purpose.  Most of the acts prescribe a particular manner for the sale of the lands as the work progresses, and all of them provide in some way to that effect.  The grants were made, not to the companies, but to the States, out of deference to them, and because they would create the railroad corporations ; but there is not a line in any act of Congress on this subject which contemplates that the States, by creating liens in their own favor, would divest the title to the lands granted.

Reference is made to the following acts of Congress.  An examination of them will show that the construction we contend for is the proper one: March 2, 1827, 4 Stat. 234 ; March 2, 1827, id. 236 ; March 3, 1827, id. 242.  See id. 290, 305, 393, 416, 662; 5 id. 731; 9 id. 83.

The principal land-grants to States to aid in the construction of railroads were made after the year 1850 by acts of Congress which vary but little in their general character. 11 Stat. 9, 15, 17, 21, 30, 195; 12 id. 624, 772; 13 id. 64, 66,

72, 95, 119, 356, 364, 365, 520, 526; 14 id. 236, 240; 15 id. 252; 16 id. 94.

The acts of the legislature of Missouri, relative to the Cairo and Fulton Railroad Company, clearly show that it was not the intention to create State liens extending over the alternate sections of land, but to grant them to the company, so that it might with the proceeds of the sales construct the road. There being a road in existence, the State lien would operate on that: the trust-deed and the State lien would not conflict.

The words, " a first *lien* or mortgage upon the *road and property* of the several companies so receiving them in the *same manner* as provided by the act approved Feb. 22, 1851, to expedite the construction of the Pacific Railroad and of the Hannibal and St. Joseph Railroad, and the act approved Dec. 10, 1855, of which this is amendatory," which are contained in the act of March 3, 1857, do not enlarge the mortgage so as to extend it over the alternate sections of land. The act of the 22d February, 1851, prescribes the *manner*, — " A mortgage of *the road of the company executing and filing their acceptance* as aforesaid, *and every part and section thereof, and its appurtenances*," &c.   The act of the 10th December, 1855, says, " Upon the condition of a first lien or mortgage as contained or reserved in the act of Feb. 22, 1851."

Two words are joined, — *road* and *property*.

A road is property. The road and property, as defined by the statute, mean " the road of the company," " and every part and section thereof, and its appurtenances."

The first loan of State credit was made under the act of 11th December, 1855, when the word " property " was not used. The acceptance of $250,000 was under that act.

The second loan was made under the act of March 3, 1857, without any expression by the legislature that two different kinds of liens were intended to be created; and then, when we turn to the act of 22d of February, 1851, we find the intention to be clear, that the liens should be on the same property, the "*road and every part and section thereof, and its appurtenances.*"

The equitable rule would be that the lien should be on the road and its appendages, as they were the property to the con-

struction of which the fund was applied.   *Canal Co.* v. *Gordon,* 6 Wall. 561.

To make lands subject to an equitable lien, the land must be described or identified. "A covenant to settle lands, without mentioning any certain lands, is no specific lien." *Seymour* v. *Canandaigua & Niagara Falls R.R. Co.,* 25 Barb. 286.

The distinction between lands which are used for the purpose of the franchise and other lands is stated in 3 Zabr. (N. J.) 511; *Dinsmore* v. *Racine & Mississippi R.R. Co.,* 12 Wis. 649; *Shamokin Valley R.R. Co.* v. *Livermore,* 47 Penn. 465; *Inhabitants of Worcester* v. *Wilson R.R. Co.,* 4 Met. 564; *Whitehead* v. *Vinyard,* 50 Mo. 30.

The contemporaneous construction of the State lien by the Cairo and Fulton Railroad Company, as to the effect of the deed to trustees of the 23d of May, 1857, is entitled to great consideration.  *Attorney-General* v. *Parker,* 3 Atk. 576; *King* v. *Bellinger,* 4 T. R. 819; *Stuart* v. *Laird,* 1 Cranch, 309; *Doe* d. *Pearson* v. *Ries,* 8 Bing. 181; *Loring* v. *Gurney,* 5 Pick. 15; *Bridgeport Bank* v. *Dyer,* 19 Conn. 139; *Contemporana Expositio est optima et fortissima in Lege,* Broom's Legal Maxims, 654.

*Mr. John D. S. Dryden,* contra.

MR. JUSTICE HUNT delivered the opinion of the court.

This is an action of ejectment brought by Blakeley Wilson, a citizen of the State of New Jersey, against Peter Boyce, to recover the possession of lands situated in the county of Scott, and State of Missouri, being a part of eleven thousand eight hundred and ninety-six acres and sixteen-hundredths of an acre purchased by Wilson on the 23d of November, 1860.

The Cairo and Fulton Railroad Company is by stipulation admitted to be the common source of title.

The title of Boyce, the defendant, is founded upon two several acts of the legislature of the State of Missouri; the first of the date of Dec. 11, 1855, the second of the date of March 3, 1857.  By the first act, the bonds of the State to the amount of $250,000 were issued to the Cairo and Fulton Railroad Company of Missouri; which bonds, it was enacted, should become and be " a mortgage of the road, and every part and section

thereof, and its appurtenances," for securing the payment of the said bonds.

By the second act, the bonds of the State to the amount of $400,000 were authorized to be issued to the same company, and also bonds to other companies; which bonds, it was enacted, "shall constitute a first lien and mortgage upon the road and property of the several companies so receiving them, in the same manner as provided by the act of Feb. 22, 1851, to expedite the construction of the Pacific Railroad and of the Hannibal and St. Joseph Railroad, and the act approved Dec. 10, 1855, of which this is amendatory." The provisions of the acts of Feb. 22, 1851, and Dec. 10, 1855, in this paragraph mentioned, have no significance in the present case.

The Cairo and Fulton Railroad Company failing to pay the interest due to the State upon these bonds, a sale was made of the lands in question, under the powers contained in the two statutes; and they were bought in by the State according to the terms of the statutes. Conveyances were afterwards made by the State to purchasers from them, under whom and whose grantees the defendant, Boyce, holds possession.

The plaintiff's title arises in this manner: The lands, in pursuance of authority given by the statute of Missouri, were conveyed by the Cairo and Fulton Railroad Company to trustees, to be sold to raise money for the construction of their road. This conveyance was of the date of the 23d of May, 1857. On the 25th of November, 1859, the trustees conveyed the land in question to Hiram S. Hamilton, from whom Wilson, the plaintiff, derives title. The question is, Which of these is the better title?

All of the State bonds had been issued to the railroad company, and the terms of the acts above referred to had been formally accepted by the company, before it authorized the execution of the trust-deed of May 23, 1857; and the trust-deed refers to the acts of Dec. 11, 1855, and March 3, 1857, above mentioned.

The mortgage lien secured to the State by the act of 1855, when the first series of bonds was issued by the State, was expressed to be upon "the road, every part and section thereof, and its appurtenances." The lands in question do not consti-

tute the road, or any part thereof.  The track of the road is not laid upon them, nor are they used in connection with the road. The terms of the second mortgage are broader; and, if the defendant's construction of its terms are correct, it is not necessary to decide whether the lands in question would pass under the expression " appurtenances."

The second mortgage to the State, made when $400,000 of bonds were issued to the company, covers " the road and property of the several companies so receiving them."  These lands were the property of the company, held by it when this statutory mortgage took effect.  The question is, Does the word " property " in the statute create a valid lien on these lands ?

1. The generality of its language forms no objection to the validity of the mortgage.  A deed " of all my estate " is sufficient.  So a deed " of all my lands wherever situated " is good to pass title.  *Johnson* v. *De Lancy*, 4 Cow. 427 ; *Pond* v. *Berg*, 10 Paige, 140 ; 1 Atk. on Conv., 2.  A mortgage " of all my property," like the one we are considering, is sufficient to transfer title.

2. It was quite within the competency of the railroad company to mortgage its lands not used for its track or appurtenances.  It might be deemed prudent and judicious to raise money upon its collateral property rather than upon its road. It might lose its foreign lands, and still be successful as a railroad company.  If it should lose its track, it must at once cease to exist.

3. In the first mortgage, the State took its security upon the road and its appurtenances.  In its second mortgage, it authorized and obtained security not only upon the road of the company and every part thereof, but also upon its property, meaning its other property, and all of its other property.  It is difficult to conceive any reason for this extension of language in the statute except an intended extension of security. Time had passed without a completion of the road.  A large additional loan was now made; and a desire to receive additional security gives a natural and logical explanation of the additional words inserted in the mortgage.

Such was the construction given to this language by the Supreme Court of the State of Missouri, in *Whitehead* v.

*Vinyard*, 50 Mo. 30.  The court there held that these words were intended to cover all the corporate property of the railroad company, including lands situated like those in controversy.  It is said, however, that the language of the court referred to was *obiter* merely, and that the point before us did not actually arise in that case.  This is an error.  The action in that case was ejectment for land purchased by Thomas Allen, in a foreclosure proceeding of a statutory mortgage upon the lands of the Iron Mountain Railroad Company, under the statute of 1857, now before us.  If the word "property" did not cover the outside lands of the company, the plaintiff could not recover.  But he did recover, the court saying that the intention of the legislature to include them was unequivocal; that there was not the shadow of a doubt upon the question. The point we are considering was the precise point before the court.

The title of the plaintiff was and is good, so far as the railroad company is concerned.  That company held the title in fee, subject only to the statutory mortgage.  He took title subject to that mortgage, which was a lien of a date prior to his title.  That prior mortgage became forfeited by the non-payment by the company of the moneys due; the lands therein described were sold by reason of such forfeiture, and were purchased by the grantor of the defendant's landlord.  The foreclosure of the prior statutory mortgage has destroyed the plaintiff's title.  This is the only point that need be considered in the case.

The plaintiff, his grantors, and all who had any interest in knowing the fact, had ready means of learning that the lands they purchased were subject to the statutory mortgage.  The deed of trust under which they claim referred to the statutes which created it, and in law they bought with knowledge of it.

*Judgment affirmed.*

NOTE. — In the case of *Wilson* v. *McCrellis*, which depended upon the same principles as that of *Wilson* v. *Boyce, supra*, MR. JUSTICE HUNT delivered the opinion of the court, affirming the judgment of the Circuit Court.