## WILLIAM G. SCHROEDER v. AURELIUS C. TURPIN, Appellant.

### Division One, December 6, 1913.

1. **SUIT TO CANCEL DEED: Failure of Consideration: Void Deed: No Description of Lands.** Where defendant failed to comply with his agreement to convey certain lands to the plaintiff, in that he executed to him a deed wholly void because it described no land at all, no point of beginning having been fixed, plaintiff is entitled to rescind and to a cancellation of his own deeds executed to the defendant as a performance on his part of the "trade" between them.

2. **CONTRACTS: Agreement to Convey Lands: Enforceable Whether Vendor has Good Title or Not.** Where a person in making a trade asserts that he has title to certain property which he agrees to convey to another as a part of the trade, that other has a right to insist upon a fulfillment of the contract whether the first party's title be good or bad.

3. ———: ———: **Failure of Vendor's Title or Deed: Resisting or Recovering Payments.** A vendee, on failure of title or failure of the vendor's deed as a conveyance, may resist the payment of purchase money or recover payments already made.

4. ———: ———: **Consideration: Inadequacy: Fraud.** Shocking inadequacy of consideration together with circumstances of fraud and imposition, are held to afford additional support to plaintiff's rights to rescind a contract for the conveyance of lands and to have his deeds in performance thereof cancelled.

5. ———: ———: **Consideration: Total Failure.** Cases affirming the adequacy of consideration when "the least benefit or advantage" accrues to the one party or any injury or disadvantage is suffered by the other, are to be distinguished from those in which the one party has failed to receive that particular consideration which the other party contracted should pass to him.

6. ———: ———: ———: **Conveyance to Third Party.** One who, in pseudoperformance of an agreement to exchange property, executes to another a void deed, cannot complain, when the grantee in that deed sues to have his own deeds cancelled, because that other party has attempted to convey to a third party by the description of the void deed.

7. ———: ———: **Rescission: Equity: Tender.** Where in an equity suit the plaintiff asks for the cancellation of his deed to defendant because the defendant's deed to him was void, and it appears that the defendant retains property worth $240 received from the plaintiff in the same transaction, the defendant cannot complain because the plaintiff has made no tender of $100 in cash and some "worthless oil stock which he received in the trade, the point not having been raised below and the equity being with the plaintiff.

8. **DEED: Not Acknowledged: Sufficient Between the Parties.** A deed signed and delivered but not acknowledged is sufficient as between the parties.

9. **PLEADING: Several Counts to Meet Proof in Same Cause of Action: Election.** A party cannot be compelled to elect between the counts of his petition, drawn to meet possible variations in the proof, where there is no repugnancy and but one cause of action is stated and the same relief is sought in both counts.

10. **EQUITY: Decree: Admission of Evidence: Appeal.** When the justice of a decree in equity is fully established without reference to certain testimony the competency of which is disputed, the Supreme Court will not discuss the chancellor's act in admitting that evidence.

11. ———: **Unclean Hands: Other Party Not Injured.** Where the defendant was neither deceived nor injured in a trans-

action by reason of the plaintiff's placing large values on his property, there is no merit in his contention that the plaintiff's hands are unclean and that therefore he has no standing in equity.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED.

*J. N. Burroughs* for appellant.

(1) A representation as to the legal effect of a paper or document will not support an action for fraud. 20 Cyc. 19; McNealy v. Balbridge, 106 Mo. App. 11; Beck & Pauli Lith. Co. v. Obert, 54 Mo. App. 247. The petition alleges fraud, if anything at all, and charges that defendant knew his representations to be false. Hence under the pleadings plaintiff is not entitled to judgment unless he has shown that defendant made representations he knew to be false. Anderson v. McPike, 86 Mo. 293; Redpath v. Lawrence, 42 Mo. App. 101. But where the thing is equally known to both parties and they have equal means of information, no relief will be granted. Buford v. Caldwell, 3 Mo. 477. Plaintiff must also have believed and had a right to believe that defendant had personal knowledge of the truth or falsity of the statements contained in the abstract to the Kentucky land. Bank v. Trust Co., 179 Mo. 648. (2) Plaintiff has failed to show that the alleged representations were an inducing cause for entering into the contract, or that they were believed and relied upon. Unless they were he is not entitled to judgment. Powell v. Adams, 98 Mo. 598; Wood v. Evans, 43 Mo. App. 230. Even though it be found that representations were made, which were willfully false, yet plaintiff cannot recover if it be not shown that he believed and relied on those representations. Bryan v. Hitchcock, 43 Mo. 527; Nauman v. Oberle, 90 Mo.

666. One who acts on his own judgment cannot afterwards claim that a fraud was practiced upon him. 20 Cyc. 39; Warren v. Ritchie, 128 Mo. 311. Defendant's refusal to warrant, is a strong circumstance against a belief and reliance by plaintiff on any representations alleged to have been made by defendant. 20 Cyc. 60. (3) This plaintiff also failed to show that he sustained damage, by reason of the contract. The rule is, that although a representation be false and intended to deceive, and did deceive, still there is no action, unless the deceit resulted in damages. Thompson v. Newell, 118 Mo. App. 405. (4) Plaintiff can have no standing in this court owing to his own misconduct. The evidence discloses that he was guilty of gross misrepresentations as to the value of his own property. One who comes into a court of equity seeking relief must himself come with clean hands. Miller v. Kelsay, 114 Mo. App. 598; Little v. Cunningham, 116 Mo. App. 545. (5) There was no failure of consideration for the deeds in question. If the least benefit or advantage be received by virtue of a contract, it will constitute a sufficient consideration. Lancaster v. Elliott, 55 Mo. App. 249; Lamp Co. v. Mfg. Co., 64 Mo. App. 115. It is not necessary that a consideration should be adequate in point of value, in order to be sufficient. Brownlow v. Wollard, 66 Mo. App. 636; Overstreet v. Beasley, 60 Mo. App. 315. (6) Before one can maintain an action in equity to rescind a contract on the ground of fraud or imposition, he must at least tender a return by his bill of complaint. Roberts v. Construction Co., 115 Mo. App. 456. Justice demands a restoration of the *status quo,* whether at law or in equity. Lomax v. Railroad, 119 Mo. App. 192. (7) It appears that plaintiff had deeded to McWeeney any claim or interest he may have held to the Howell County land, long prior to the filing of this suit and the same had not been reconveyed to him at the time of the commencement of this action. Therefore he was not the real party in interest. Van

Stewart v. Miles, 105 Mo. App. 242; Mortgage & Trust Co. v. Crutcher, 169 Mo. 444. (8) Plaintiff seeks to recover upon two different theories as stated in the different counts of his petition, though relating to the same transaction. Hence the court erred in overruling defendant's motion to require plaintiff to elect. Erhlich v. Ins. Co., 88 Mo. 249.

*O. L. Haydon* and *W. P. Campbell* for respondent.

(1) The maxim that he who seeks equity must do equity, is not a question of pleading, but of decree. If there is anything which, under all the circumstances, the plaintiff ought to do to put defendant in *statu quo*, the court may so decree. Kline v. Vergil, 90 Mo. 239; Baier v. Berberich, 6 Mo. App. 537. (2) If a representation made prior to a transaction, and directly relating to it, is of such a character that it would naturally and reasonably induce or tend to induce, any ordinary person to act upon it, and enter into the contract or engage in the transaction, and is in fact followed by such action on the part of the other person, then it will be presumed that it was made for the purpose and with the design of inducing that person to do what he has done; that is, to enter into the agreement, or engage in the transaction. The design will be inferred from the natural and necessary consequences. 2 Story Eq. Jur. (3 Ed.), 880. (3) If a person makes a representation that he believes to be false, or has good reason to believe is false, and leads to injury, he is as liable as if he knew it to be false. Maler v. Rankin, 117 S. W. 641; 2 Story Eq. Jur. (3 Ed.), 886, 887. (4) A court of equity will not reimburse a fraudulent grantee, on the cancellation of the deed, for the consideration when it was paid by the defendant of his own wrong and in furtherance of an actual fraud. Life Ins. Co. v. Smith, 117 Mo. 261. (5) The court will not decree a return of the oil stock, because it was paid by defendant, if at all, in furtherance of an actual fraud.

Ins. Co. v. Smith, 117 Mo. 261. (6) The plaintiff had the right to take the word of the defendant and rely upon his statement that he owned the Kentucky land. 2 Story Eq. Jur. (3 Ed.), 891, 895, 896. (7) The defendant not having tendered an issue calling for a restoration, a court of equity will not go out of its way to aid a fraudulent grantee, where the amount is comparatively inconsiderable, and where a return has been prevented in part by the act of the defendant, and where the property to be returned may not in fact belong to defendant, but to Lowe. 2 Story Eq. Rem. (3 Ed.), 688. (8) Plaintiff testified that the Detroit oil stock was a gift from Turpin, promised on the day of the deal with Lowe, in March, 1906, and that he surrendered the same to the officers who arrested Lowe and Turpin, and that he considered it of no value and that he has never claimed it and doesn't want it. In the absence of an issue specially tendered by defendant, a court of equity should not decree a return of that stock. 2 Story Eq. Rem. (3 Ed.), 688. (9) The issues in this case are different in character from the insurance case cited in appellant's brief (McHoney v. Ins. Co., 52 Mo. App. 94. Distinguished in Mining & Smelting Co. v. Fire Ins. Co., 62 Mo. App. 294). The case turned on the negligence of the insured. The reference to the character of the evidence appears in the opinion on motion for a rehearing, and the rule laid down is based on the particular facts and circumstances of that case. (10) The rule of equity that a party seeking to set aside a contract must place, or offer to place, the opposite party *in statu quo,* is not applicable to a case where a deed has been obtained by fraud and without a valid consideration, or where the consideration is valueless. Freeman v. Reagan, 26 Ark. 373; Adams v. Reed, 11 Utah, 480. (11) If defendant has entangled himself in the meshes of a knavish plot by his own fraud and connivance, so that the defendant cannot, by reason of complications for which he is not to blame, loosen him,

the plaintiff's remedy of cancellation will not be defeated because he is unable to put the defendant *in statu quo.* ˙ Railroad v. Railroad, 11 Daly (N. Y.), 373; Coffey v. Ruffin, 4 Cold. (Tenn.) 487; Brown v. Norman, 65 Miss. 369; Paskuin v. Milliken, 163 Mo. 70.

BLAIR, C.—Since the appeal was taken the original plaintiff has died and the cause has been revived in the name of Anna Kendall, his sole heir at law.

This is a suit to cancel deeds whereby plaintiff had conveyed to defendant one hundred and forty acres of land in Howell county.

The negotiations which resulted in the execution of the deeds sought to be canceled began with the acquaintance of the parties hereto and both had their origin upon the occasion of plaintiff's first visit to a place in Chicago frequented by persons known as "traders," the vocation of most, if not all, of whom seems to have been the dealing in stocks, bonds, mortgages, deeds, etc., mainly in what defendant terms "unsight unseen trades."

It is fairly inferable from the record that this phrase possessed, among these traders, a meaning not greatly different from that which it has among schoolboys, i. e., each high contracting party seeks to offer something so valueless that he cannot lose however worthless the thing he receives may be. There was this difference, however; among schoolboys the rule "whole blade or no trade" sometimes prevails—among the "traders," above mentioned, however, we find no evidence of any corresponding restriction upon their freedom of contract.

There is no evidence plaintiff was advised of the custom prevailing in this busy mart of trade in which he was, at the age of seventy-nine years, introduced to defendant by one Low, who was a "trader" and whose assets consisted of a valise filled with mining stock,

ancient railroad bonds, etc., and a willingness to trade for anything anyone might offer.

That plaintiff did not know the rules and customs under which his new acquaintenances operated is evidenced by the fact that he offered actual property, to which he had good title, and by the further fact that he tried to get defendant to "put some money into the trade." On this last proposition he was at first rather sternly rebuked, though defendant did "put in" twenty-five dollars after confirming, by visits to Indiana and Missouri, the astonishing suspicion that plaintiff really owned the land he claimed in these States.

Plaintiff owned the land involved in this suit, twenty acres (subject to mortgage) in or near South Bend, Indiana, and eight lots in Denver, Colorado.

To plaintiff defendant represented that he owned a one-half interest in 10,000 acres of land in Kentucky and exhibited an abstract of title and a letter from an abstractor of the county in which the land was said to be located, which letter glowingly pictured the wealth of timber above and coal beneath the tract described.

This land defendant agreed to convey to plaintiff in exchange for the twenty acres at South Bend (subject to mortgage), eight lots in Denver and the one hundred and forty acres involved in this suit. Plaintiff's properties were, in the trade, valued at $500 more than defendant's land, and the parties differ as to whether this sum was to be paid in cash or secured by mortgage on the Howell county (Missouri) tract. The pretended consummation of this exchange resulted in the conveyance to defendant of all he bargained for and all plaintiff had, while plaintiff received twenty-five dollars in money, some oil stock and a deed in which the description is as follows:

"A one-half interest in the following described real estate: Beginning at a point on the Big Sandy river below the southern line of James H. Mallory;

running thence north 42 degrees E. 1900 poles to a stake; thence south 48 degrees E. 900 poles to a pine; thence south 48 W. 1900 poles to a point in the Big Sandy river marked by a double stump; thence along the Big Sandy river to the point or place of beginning, containing ten thousand acres, more or less,'' in Johnson county, Kentucky.

There is evidence no James H. Mallory then lived or ever had lived in Johnson county, and also *direct evidence,* received without objection, that there was no possibility of locating any land by the description in the deed.

Plaintiff subsequently demanded $500, representing the difference in trading valuations, as stated, but defendant contended plaintiff had agreed to accept a mortgage on eighty acres of the Howell county land, securing a note for $500 to be executed by a ''straw man'' of plaintiff's selection. Defendant claimed also to have discovered that the mortgage on the South Bend property was $500 greater than had been represented, and insisted in offsetting this excess against plaintiff's demand. Low, ''a trader'' *par excellence,* as the term is above defined, then began to take an active interest and, for plaintiff's ''interest'' in the Kentucky land, ''traded'' him some railroad bonds, secured by a fourth mortgage on the property of the ''South Carolina Railway Company,'' which bonds showed no transfer to Low, though by their terms they were unassignable except by transfer on the company's books, certified on the bond itself by the company's transfer agent. The last transfer had been made about twenty years prior to the transaction between Low and plaintiff. Defendant knew of this ''trade'' at the time but testified he had no interest in it, though immediately thereafter he and Low and plaintiff engaged in another ''trade'' whereby plaintiff received seventy-five dollars and another railroad bond and acknowledged satisfaction of the $500 mortgage defendant had

agreed to execute to him and agreed to pay the $500 mortgage on the South Bend property which was overlooked in the original agreement.

The judgment was for plaintiff, canceling the deeds to defendant.

I. It is averred in the answer that the abstract of title to the Kentucky land, exhibited to plaintiff, showed title in defendant, and defendant testified he had had the "title" thereto for ten years, having acquired it from the persons named in the abstract as his grantors. Plaintiff testified defendant told him he owned the one-half interest in the 10,000 acres in Johnson county, Kentucky, and agreed to convey that interest to him, and the finding of the truth of that testimony is fully justified.

*Suit to Cancel Deed: Failure of Consideration.*

The deed executed by defendant is absolutely void by reason of the fact that it describes no land at all, no point of beginning having been fixed (2 Devlin on Deeds [3 Ed.], sec. 1011a), and it also appearing from both the deed and testimony offered that it is impossible to identify any land in Johnson county, Kentucky, as falling within the description given. The description in the deed was not taken from the abstract.

In fact, therefore, defendant has not complied with the agreement to execute to plaintiff a deed for a one-half interest in the Kentucky land. Whether his title thereto was good or bad plaintiff had a right to contract for a conveyance thereof and a right to insist upon the fulfillment of that contract. Whatever interest defendant had (and the answer avers the abstract shows title in him and he testifies he had the title) plaintiff contracted for it. The fact that defendant refused to execute a warranty deed does not excuse him from executing the deed he agreed to execute.

The instrument in evidence is no deed at all, and defendant has failed to perform the agreement on his

part. He actually received all plaintiff agreed to convey to him, one hundred and sixty acres of land and eight city lots, and now seeks to retain it despite his own failure to perform the contract. His failure to comply entitles plaintiff to rescind. [2 Warvelle on Vendors, sec. 828.]

Also, the principle which entitles a vendee, on failure of title or failure of the deed as a conveyance, to resist the payment of the purchase money or recover payments already made (Owens v. Rector, 44 Mo. l. c. 392; Wheeler v. Standley, 50 Mo. 509) entitles plaintiff to rescind and recover his land.

**Failure of Conveyance.**

Further, the shocking inadequacy of the consideration (taking into account the absolute nullity of defendant's deed) together with the circumstances of imposition and fraud disclosed by the record, affords additional support of plaintiff's right to rescind. [Obst v. Unnerstall, 184 Mo. l. c. 392.]

**Inadequacy of Consideration.**

The cases cited affirming the adequacy of considerations of agreements when the "least benefit or advantage" accrues to the one party or injury or disadvantage to the other are not applicable. In this case plaintiff has not received the consideration defendant contracted should pass to him, while the cases cited belong to a class involving no such situation.

**Total Failure of Consideration.**

II. So far as concerns the contention that plaintiff is estopped to rescind because he attempted to convey the Kentucky land to Low, it will suffice to say that plaintiff had no interest he could convey, and defendant cannot complain because of the ineffectual attempt to do so. It would not have been necessary for plaintiff to have offered to reconvey to defendant before bringing this suit. In the circumstances such reconveyance would

**Conveyance to Third Party.**

have been "a nugatory act and unavailing for any purpose." [Lawless v. Collier's Exrs., 19 Mo. l. c. 485.]

Plaintiff acquired no interest under the deed to him and there was, consequently, nothing he could convey to Low or reconvey to defendant.

The attempted conveyance was a nullity and, with respect to the Kentucky land, left both plaintiff and defendant exactly as they were before. Whatever Low's rights may be by reason of the ineffectual character of plaintiff's deed to him, defendant was in no way affected thereby.

III. It is contended plaintiff's suit must fail because the petition does not tender to defendant the one hundred dollars in cash and some oil stock received from him in the transaction. As to the latter item the weight of the evidence is that it was worthless. The trial court must have so found to render the judgment it did, and we do not feel disposed, on this record, to overturn that finding. Plaintiff, however, received one hundred dollars in cash. For this alone, in truth, he conveyed to defendant the South Bend property, the Howell county land, worth about $2000, and eight lots in Denver, concededly worth $240. These last mentioned lots defendant still retains, and this decree, of course, does not disturb his title to them. Defendant testified the South Bend property was sold under the mortgage upon it.

*Tender.*

The cases cited by defendant's counsel apply the rule that in actions at law a tender is a condition precedent to the rescission of a release of the cause of action upon which recovery is sought.

In this case the question of tender was not raised in the trial court in any manner, and it clearly appears from the facts in evidence that defendant had and retained the lots in Denver, worth at least two hundred and forty dollars. This is a suit in equity, and on the

grounds that the question was not raised below and that the court could not, on this record, have justly decreed any return to defendant, the point must be ruled against him. [Peak v. Peak, 228 Mo. l. c. 556, 557.]

IV. After the trade with defendant, plaintiff, acting on bad advice, attempted to execute a deed to one

**Deed not Acknowledged.** McWeeney for the land in suit. It is contended plaintiff did not own the land and could not sue. McWeeney reconveyed to plaintiff, omitting to acknowledge the deed, but signing and delivering it prior to the institution of this proceeding. This was sufficient as between the parties (Vincent v. Means, 207 Mo. l. c. 715; Genoway v. Maize, 163 Mo. l. c. 231, 232), and defendant is in no position to complain. The subsequent acknowledgment by McWeeney does not affect the question. Whether the deed to McWeeney was void under the rule that a mere right to sue for fraud upon the assignor is not assignable (Ryan v. Miller, 236 Mo. l. c. 514, 515) it is not necessary to decide.

V. The trial court's refusal to require plaintiff to elect between the counts of his petition did not consti-

**Election.** tute error. Counsel does not argue the question or attempt to point out any inconsistency between the counts. The petition presents the ordinary case of separate counts drawn to meet possible variations in the proof. There is no repugnancy within the rule (Rinard v. Railroad, 164 Mo. l. c. 284), and but one cause of action is stated and the same relief is sought in both counts.

VI. In view of what has been said it becomes unnecessary to discuss the competency of

**Decree: Admission of Unnecessary Evidence.** the testimony concerning defendant's title to the Kentucky lands, the justice of the decree being fully established without recourse to that testimony.

State ex rel. v. Robinson.

The suggestion that plaintiff's hands are unclean because he placed large values on his properties is without merit. The record shows defend-ant was not deceived and demonstrates he was not injured thereby. Defendant cannot very consistently harmonize this contention with his resistance to rescission. The rule invoked has no such application as suggested.

**Standing in Equity.**

The net result of the "puffing" on both sides was the acquisition by defendant of nearly $2500 worth of land for $100.

It may be added that it is unnecessary, in view of what has been said, to discuss in detail the question whether the allegations of fraud were proved. The judgment is affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All of the judges concur.