Donna **LORRAINE**, Plaintiff-Respondent,

v.

**E. M. HARRIS BUILDING COMPANY,**
a Corporation, Defendant-Appellant.

No. 31887.

St. Louis Court of Appeals.

Missouri.

May 18, 1965.

Rehearing Denied June 21, 1965.

Evans & Dixon, John C. Shepherd, Paul V. Gilbert, St. Louis, for defendant-appellant.

Louis S. Czech, Clayton, for plaintiff-respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an action for personal injuries which allegedly occurred when the plaintiff, Donna Lorraine, fell on the front porch of a display house of the defendant. Plaintiff recovered a verdict and judgment and defendant has appealed.

Prior to the voir dire examination plaintiff's counsel, in outlining her case to the jury panel, referred to a wet "wooly" mat on the defendant's porch and stated that as the plaintiff was coming out of the house she stepped on the mat, got her foot wet causing her to slip. The defendant objected and requested that the panel be instructed to disregard this statement with regard to the mat being wet as there was no allegation in the petition concerning the wet mat. The court stated that the wet mat was mentioned in plaintiff's deposition, and overruled the objection. Defendant's counsel then stated that if there was a contention that the mat played a part in the accident, the defendant claimed surprise for the reason that such was not pleaded, and requested a continuance to meet the issue. The court referred to the matter after the jury was selected at which time the defendant renewed its objection, the objection again being overruled on the basis that plaintiff had referred to the mat in the deposition. The defendant then requested the court to allow its objection to continue throughout the trial.

The plaintiff was the first witness. She testified that she, her husband and two neighbors were visiting the defendant's subdivision and a display house therein when the accident occurred. It had rained the night before, which was Saturday night. The plaintiff and her group got to the sub-

division about 12:00 on Sunday. The group went into the house, looked around, and all left by way of the front door except the plaintiff, who stopped before she left and went back to check something about the kitchen. Then, several minutes later, she started out the second time, she stepped onto the porch and onto a "wooly" mat, turned around and reached back and pulled the door closed. She stated that the porch was dry. She could not tell whether the mat was wet or dry. She saw nothing on the porch as she started to walk, she took one step, then took another one and her foot slipped out from under her and she fell to the ground by the side of the porch. There was no hand railing or banister on the porch.

Plaintiff's husband testified that they had gone into the display home and he and the other people came out and were waiting for the plaintiff; that he heard a thud and saw his wife on the ground. He went to her and Paul Willenbrink went on the porch and stepped on the mat and found it was wet. While he was standing over his wife he saw one foot track and a little "slide" on the porch and he looked and couldn't figure out where it came from. He stepped on the mat and then on the porch and left wet prints; that when he entered and came out of the house the porch was dry.

Mr. Willenbrink, a neighbor of plaintiff, and who was with plaintiff and her husband, testified on behalf of plaintiff that he heard plaintiff fall, but didn't see her fall. He said the porch and sidewalks were dry and the porch was dry when he went into the house and also when he came out; that he looked at the porch after plaintiff fell and saw a wet track and slide mark; that he stepped on the mat and made tracks on the porch; that by looking at the mat one couldn't tell if it was wet or dry; that with his wet foot he could slide on the porch.

Bloyce L. Williams, defendant's superintendent of construction, was called by plaintiff to testify. He stated that this particular porch was finished with a metal trowel; that this was different from a wood trowel in several respects, one of which is you get a rougher finish with the wood trowel; that the walk in front of the house was finished with a wood trowel; that the surface of the concrete porch is slippery when wet and that they knew this when they put the finish on the porch; that a drier composed of one-quarter cement and one-quarter sand was put into the finish of the concrete; that this closes the pores of the finish so that it does not absorb water and would be slicker when wet. Williams was asked, over defendant's objections, whether certain safety precautions could have been taken on the porch. The witness testified that they could have provided the steps with rubber treads and that they could have used a rough finish on the porch, as well as corundum, which makes a gritty surface when put into cement, and they could have provided a hand rail or a banister; that defendant furnished the display home and provided the coco mat which was about two inches thick made of fiber with cord on the bottom.

John McHale Dean, an architect, testifying on behalf of plaintiff stated that the house was built high off the ground and that three or four risers off the ground would be considered high; that under the circumstances, it would have been proper to have had some form of railing on the porch.

Max W. Crask, a cement contractor, also testified for plaintiff. He stated that there are six types of finishes on concrete; that if a dry cement is used on top it gives it more of a glaze, firm finish, will wear longer and will become slippery when wet; that as a rule with three risers a hand rail is provided and that there were three steps at this porch.

Defendant's evidence consisted of Professor Alvin W. Brust, of Washington University, a teacher in material of construction. He testified that he had examined these steps and that they were typical of similar steps of front porch slabs throughout the area.

■ Appellant's first contention is that plaintiff did not make a submissible case. Appellant begins its argument by saying that it relies heavily on Point II of its brief that plaintiff's failure to plead anything concerning the coco mat, that it was wet, or anything concerning wetness should have prevented plaintiff from introducing evidence concerning these matters. It then states: " * * * Certainly, as no allegations of negligence concerning the wet mat are pleaded they should not be considered in determining whether the plaintiff made a submissible case. A judgment for the plaintiff cannot be sustained on a theory which is not pleaded. Horvath v. Chestnut Street Realty Co. [Mo.App.], 144 S.W.2d 165, 169." That is true. It is also true that in a personal injury action, where the judgment must be reversed because of submission of the case on a theory other than that pleaded, and where the facts are such that with a proper petition, the question of defendant's negligence would have been for the jury, the judgment will not be reversed outright, but the cause will be reversed and remanded for a new trial. Parker v. Drake, Mo.App., 220 S.W. 1000. This is what was done by this court in the Horvath case, which appellant cites.

Being aware of the latter rule appellant has elected to " * * * consider plaintiff's evidence in its entirety both the pleaded and unpleaded aspects * * *," and contends " * * * that even with the evidence of the wet mat the plaintiff did not make a case and thus no such remand should be necessary here."

■ The rule with respect to the duty which the owner or occupant of land owes to an invitee has been stated many times. It is: " * * * The owner of lands is liable in damages to those coming thereon, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the premises, which is known to him and not to them, and which he has suffered negligently to exist, and of which they have received no notice. * * *" Vogt v. Wurmb, 318 Mo. 471, 475, 300 S.W. 278, 279. It is not a lack of understanding of this general rule that causes the courts concern, but rather the application of the rule to a given set of facts.

■■ It has been many times held that negligence is a relative term, to be tested under the facts of each particular case. It is also well established that negligence is not a question of law unless the acts on which its existence depends are of such a character that reasonable minds could not differ, and where different conclusions can be drawn from the evidence, negligence is a jury question.

■ Appellant states in its brief that it " * * * has sought to find cases analogous to the present facts. None could be found which were identical but defendant will set out several which were the closest to our situation." It then proceeds to quote from cases involving falls on marble, terrazzo and waxed floors. These cases do not govern the instant case. Here we have a situation where the concrete porch was of such a finish that it was smooth. The finish was made more slick by using a drier to close the pores so that water would stand on the porch. But in addition, we have the wet mat being allowed to remain directly in front of the entrance door. The evidence is undisputed that at the time plaintiff and her group came to the display house the porch was dry and the sidewalks were also dry. It had not rained since the night before. In arguing that plaintiff was guilty of contributory negligence appellant's brief says: " * * * It is common sense that such a coco mat would be wet and remain wet long after the sidewalks had dried especially since the purpose of such mats is for people to wipe their feet on before entering the house. * * *" Of course, if the porch and sidewalks were dry there would have been no need for people invited to enter the house to wipe their feet and thus not bring moisture and mud into the

house. What then was the purpose of the mat being there at the time plaintiff fell? Appellant knew that the porch when wet would be slippery, yet it permitted the wet mat to remain "right in front of the door." It would have been a simple matter for appellant to have pushed the mat to one side. We are not prepared to hold that, as a matter of law, plaintiff did not make a submissible case. On the other hand, we think that under the particular facts here involved, reasonable minds may well differ concerning whether or not negligence existed. Thus the question was one of fact for the jury to determine.

 Nor can we hold that plaintiff was contributorily negligent as a matter of law. She testified that by looking at it she could not tell whether the mat was wet or dry. Her neighbor, Mr. Willenbrink, said the same thing. As said in the case of Holmes v. Egy, Mo.App., 202 S.W.2d 87, 91, " * * * 'plaintiff was not required, in the exercise of ordinary care, to look out for an unsafe condition of which she (plaintiff) had not been warned or did not know, or which was not obvious to one in the exercise of ordinary care.' * * * " Whether plaintiff was exercising that degree of care for her own safety which an ordinarily prudent person would have exercised under the same or similar circumstances was a jury question.

Instruction No. 1 required a finding for plaintiff in the event the jury found " * * * that this said cement porch was maintained in that there was a mat thereupon which was wet * * *." Appellant's assertion that there was no allegation in the petition concerning the wet mat is correct. And no amendment to the petition was made.

As stated by our Supreme Court in the case of Faught v. St. Louis San Francisco Ry. Co., Mo., 325 S.W.2d 776, 781, " * * * neither the evidence nor the instructions may be broader than the pleadings, one may not plead one state of facts and theory and to the unprepared surprise of his adversary recover on another and different theory and state of facts. * * * "

For this error in the instruction, which was highly prejudicial to appellant, the judgment should be reversed and the cause remanded. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BROADDUS, Special Commissioner, is adopted as the opinion of the court, and the judgment is reversed and the cause remanded.

WOLFE, P. J., RUDDY, J., and J. MORGAN DONELSON, Special Judge, concur.