PINE LAWN BANK AND TRUST COM-
PANY, Plaintiff-Appellant,

v.

Dale A. URBAHNS and Mrs. Dale A. Ur-
bahns, Marie Stewart and Betty M. Shire-
man, Defendants-Respondents.

No. 32727.

St. Louis Court of Appeals.

Missouri.

May 16, 1967.

Motion for Rehearing or for Transfer to Su-
preme Court Denied June 14, 1967.

W. W. Sleater, St. Louis, for plaintiff-appellant.

Carl E. Starkloff, Clayton, for defendants-respondents, Stewart & Shireman.

Ziercher, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, David J. Tompkins, St. Louis, for defendants-respondents Dale A. Urbahns & Mrs. Dale A. Urbahns.

THEODORE McMILLIAN, Special Judge.

This is an action filed in equity by the plaintiff-appellant, Pine Lawn Bank and Trust Company, hereinafter referred to as appellant, to foreclose an alleged lien on

real estate located in St. Louis County. The trial court dismissed the cause of action against all defendants, hereinafter referred to by their individual names; and further declared that a certain Magistrate Court judgment was not a lien against the real estate in question, and that appellant was not entitled to a lien or to foreclosure. Appellant appealed from this judgment.

■ Originally, the appeal was lodged in the Missouri Supreme Court; however, the Court, on its own motion, ordered the cause transferred to this court for lack of jurisdiction, citing McHolland v. Treadway, 328 Mo. 721, 41 S.W.2d 375, for the proposition that the question of appellant's right to a lien on the land does not involve title to real estate within the meaning of the Missouri Constitution, Article 5, Section 3, V.A.M.S.; Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S.W.2d 771.

■ The rules of review attendant upon a case of this nature are well known. We are to hear the case de novo, giving due deference to the trial court's findings on matters involving the credibility of a witness, and to reach our own conclusion as to the facts. Lake Development Enterprises, Inc. v. Kojetinsky, Mo.App., 410 S.W.2d 361, 363 [1]; Selsor v. Shelby, Mo.App., 401 S.W.2d 169.

■ Defendants Urbahns claim that the judgment of the trial court should be affirmed for the reason that appellant failed to preserve any error for review. On March 4, 1965, the trial court entered a decree, and thereafter, on March 18, 1965, appellant's motion for a new trial was filed. The court did not rule on appellant's new trial motion; but, on March 29, 1965, on its own motion, set aside the March 4, 1965, decree and entered a new decree. Thereafter, appellant did not file another motion for a new trial nor refile the first one. Appellant appealed from the judgment and decree entered on March 29, 1965. Seizing upon the failure to file a new motion for a new trial, defendants Urbahns say, pursuant to Civil Rule 79.03, V.A.M.R., nothing is preserved for review. Under these circumstances, that rule did not require plaintiff to file another motion for new trial. The motion to dismiss is denied.

On August 3, 1959, defendants, Betty M. Seabaugh, nee Shireman, and her husband, Edward Seabaugh, borrowed $2,805.73 from appellant. The loan was secured by three instruments: (1) the note and (2) the collateral security agreement (both on one document), and (3) a motor vehicle chattel mortgage. Paragraph 9 of the collateral security agreement reads as follows:

"(9) Said Bank *may record* this note in the office of the Recorder of Deeds of any City or County of any State and thereupon said *Bank shall have a lien for its payment upon any interest in any real property or leasehold owned by any maker * * *."* (Emphasis ours.)

At the time of the execution of the note and agreement, defendant Betty M. Shireman was the owner of record of Lot 22 of Lower Ladue Hills, according to the plat thereof recorded in Plat Book 57, pages 2 and 3 of the St. Louis County Recorder's Office, together with all improvements thereon known and numbered as 8589 Harold Drive.

The evidence showed that E. L. Altenbernd, assistant secretary for appellant, handled the loan negotiations. He said that he was present when the Seabaughs signed the note and agreement, and he affixed his signature in two places over the word "witness" in the presence of the Seabaughs. After default of two payments, Altenbernd, on April 4, 1960, took and exhibited the note and collateral agreement before a notary public. Then he made an affidavit (1) that he personally appeared before the said notary and that the notary knew him (Altenbernd) to be the person described in the note and agreement as a witness; and (2) that the Seabaughs, whose names were subscribed to said instrument as parties, were the persons who executed the same and that Altenbernd subscribed his name as

a witness thereto. On the same day, appellant's vice-president, J. T. Dodds, Jr., made an affidavit declaring appellant to be the owner of the note and security agreement executed by the Seabaughs and that said note is "filed" (sic) for record to establish a lien on the Lower Ladue Hills property. Altenbernd's acknowledgment and Dodd's affidavit were then physically attached to the note and collateral agreement, and then filed with the St. Louis County Recorder of Deeds on April 19, 1960.

On July 1, 1960, defendant Betty M. Shireman, by warranty deed, transferred the said property to Marie T. Stewart. Miss Stewart, on December 1, 1960, transferred the property to defendant, Dale A. Urbahns, who joined with his wife, Aleeta, on July 12, 1961, to convey the property in question to Aleeta and Dale A. Urbahns, wife and husband, who are the present titleholders of record. On July 27, 1961, Betty M. Shireman filed a petition in bankruptcy, and was discharged in bankruptcy on October 2, 1961. Other facts, as needed, will be referred to hereinafter.

Appellant contends that the court erred in the following respects: (1) failure to declare a lien and to order a foreclosure and sale of the property in question; (2) in holding that appellant is not entitled to a general judgment against Betty M. Shireman; and (3) in not allowing appellant attorney fees.

It would be unrewarding and unavailing to consider other issues raised unless we can first establish that the collateral security agreement either created a lien or, by the occurrence of a condition subsequent, provided the mechanism by which a lien could be established. Consequently, we shall examine, first, this issue pertaining to the lien.

At common law there could be no lien upon land but only on things of a personal nature, the possession of which had been given to lien claimant. Tiffany's Real Property, New Abridged Edition, Section 948; 2 Spence, Eq.Jur. 796. However, with the passage of time, the Chancellor in Courts of Equity began to recognize certain rights in land, and in personalty, not based on possession, yet of a character analogous to common law liens; therefore, these came to be known as "equitable liens." These rights consist of personal obligations of landowners which equity enforces against the land and which follow the land until they reach those of a purchaser for value without notice. Tiffany's (supra). Of course, around this body of law, certain rules and regulations developed which we shall refer to more fully hereafter. "Equitable liens," as stated in 1 Harvard Law Review 55, 65, 66, do not confer proprietary or real rights, but, merely constitute the means by which equity enforces personal obligations. So, with this background, since land is ordinarily the primary fund for the payment of both debts and legacies, the presumption is always to that effect, and a clear intention must be established to charge the land for personal obligations. Wright v. Denn ex dem. Page, 10 Wheat. 204, 23 U.S. 204, 6 L.Ed. 303; In re Powers, 124 N.Y. 361, 26 N.E. 940; Heslop v. Gatton, 71 Ill. 528; Owens v. Claytor, 56 Md. 129.

In recognition of the above principles, Mr. Justice Story in Equity Jurisprudence, Redfield 10th Edition, Vol. II, Section 1231, Page 483, stated:

"Indeed, there is generally no difficulty in equity in establishing a lien, not only on real estate, but also on personal property * * * wherever there is a matter of agreement, at least against the party himself and third persons who are volunteers or have notice; for it is a general principle of equity that as against the party himself, and any claiming under him voluntarily or with notice, such an agreement raises a trust, citing, Legard v. Hodges, 1 Ves., Jr., 478."

To like effect is Jones on Mortgages, 5th Edition, Vol. I, Section 162, Page 138, where it is said:

"In addition to these formal instruments which are properly entitled to the

designation of mortgages, deeds, and *contracts,* which are wanting in one or both of these characteristics of a common law mortgage, are often used by parties *for the purpose of pledging real property, or some interest in it, as security for a debt or obligation,* and with the intention that they shall have effect as mortgages. Equity comes to the aid of the parties in such cases, and give effect to their intention * * *." (Emphasis ours) See also Ketchum v. St. Louis County, 101 U.S. 306, 25 L.Ed. 999 (affirming Ketchum v. Pacific Railway Co.,) Federal case No. 7,740, 4 Dill 187 (note)

■ The legal prerequisite, which seems to be common to all the decided cases, is that there must be an agreement (contract), formal or informal, which evidences an intention to make the land security for the payment, either of money or an obligation. Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865; Ketchum v. St. Louis County, supra; Chase v. Peck, 21 N.Y. 581; Borden v. Croak, 131 Ill. 68, 22 N.E. 793. In the following case of Smith, Inc. v. Steinberg, Mo.App., 280 S.W.2d 696, 703, the Court, quoting from Jones on Liens, said:

"'An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. * * *'" See also Butts v. Broughton, 72 Ala. 294 (mere endorsement on note that it is a charge on land may make it such.)

Further, at page 704, the Court, quoting from Pomeroy's Equity Jurisprudence, continues:

"'* * * The theory of equitable liens has its ultimate foundation, therefore, in contracts, express or implied, which either deal with or in some manner relate to specific property, such as a tract of land, * * *.'" See also Wilkinson v. Tarwater, Mo., 393 S.W.2d 538, 542(2).

The question for determination is: did the instrument which sought to create the lien appropriate and describe with certainty and particularity the real estate intended to be encumbered? Defendants, of course, answer in the negative, and in support thereof rely upon Schroeder v. Turpin, 253 Mo. 258, 161 S.W. 716; Smith, Inc. v. Steinberg, supra; Hamburg Realty Co. v. Woods, Mo., 327 S.W.2d 138; and Kuppenheimer and Company, Inc., v. Mornin, et al., 8 Cir., 78 F.2d 261. In the instant case, there was (1) a debt, (2) an agreement or contract, in writing (note and collateral security agreement), (3) the maker did, in fact, own the property at the time of the recordation and (4) an intention on the part of the maker to give a lien on property (paragraph 9 of the collateral security agreement); provided that the note and collateral security agreement was recorded.

The Schroeder case holds that a deed executed by defendant is absolutely void when it describes no land at all. In that case, no point of beginning was fixed, and it appeared from both the deed and the testimony offered that it was impossible to identify any land in the County, meeting the description given. Furthermore, the Smith case, also states that there must be an intention to charge some particular property. In that case, plaintiff owned 74 cases of cigarettes which it sought to replevin. Defendant claimed the right to withhold the property because of an equitable lien created by an employment contract in which defendant, as agent, was to receive as compensation one-third of the profits of the business. Defendant cross-claimed seeking a lien and an accounting so as to impress the cigarettes for the amount found to be due. The Court reversed the judgment for plaintiff, which had denied the lien, and ordered it to be retried in accordance with their opinion.

In the Hamburg case, supra, a husband and wife were tenants by the entirety. The

wife sought an equitable lien for monies advanced by her during marriage, at the special instance and request of her husband, to pay monthly installments, to make improvements and to make repairs. The husband told the wife that if he did not get the money any other way, he would give it to her when the property was sold. The Court held that this language was merely designed to fix the ultimate time for payment, not an intention to pledge particular property or a fund. In the Kuppenheimer case, supra, Steely Company gave plaintiff its note for $8,500. The President of Steely Company was the grandson of defendant. Defendant guaranteed payment of the note by his endorsement, and further delivered this writing:

"* * * the undersigned does hereby promise and agree, not to convey or mortgage the real estate now owned by him, wherever situated, until said promissory note and interest * * * has been paid; in the event, however, that said real estate or any part thereof be sold or mortgaged, the undersigned, hereby agrees to pay the proceeds arising from such sale or mortgage, towards payment of said promissory note."

The Court held, apart from any decision as to whether any real property had been described with particularity, that the above language did not evidence an intention that any real estate was to be held as security for a debt. None of these cases aid the defendant.

More appropriate is Wilson v. Boyce, 92 U.S. 320, 23 L.Ed. 608, where the State of Missouri, to aid the Railway Company, had issued bonds of the State to several railroad companies, and had declared that they shall constitute first liens and mortgages upon the roads and property of the several companies so receiving them. After default, the State bought in the bonds and sold them to grantees under whom Boyce claimed. Wilson, on the other hand, claimed title to the property as a grantee of the trustee to whom the Railway Company had conveyed the land. Wilson, the plaintiff in that action, contended that the language was too general and did not describe with certainty the property pledged. The Court, in construing the words " * * * bonds of State * * * shall constitute a first lien and mortgage upon the road and property of the several companies so receiving them * * * ," held:

"The generality of its language forms no objection to the validity of the mortgage. A deed 'of all my estate' is sufficient. So a deed 'of all my lands wherever situated' is good to pass title." (Citing Jackson ex dem. Howell v. DeLancey, 4 Cow. 427; Pond v. Bergh, 10 Paige, 140.)

Another case of like tenor is Ketchum v. St. Louis County, supra, which was for a determination of whether or not St. Louis County had an equitable lien on the earnings of the Pacific Railroad of Missouri. Here, too, the claim of specific appropriation was swept aside, the Court saying:

" 'If a debtor by a concluded agreement with a creditor sets apart a specific amount of a specific fund in the hands, or to come into the hands, of another from a designated source, and directs such person to pay it to the creditor, which he assents to do, this is a specific appropriation binding upon the parties and upon all persons with notice who subsequently claim an interest in the fund under the debtor.' "

■ ■ To be gleaned from these two cases "describe with certainty and particularity" or "distinctly appropriated" means that the property, fund, or whatever is to be encumbered must either be identified literally, or so described as to be capable of identification. See DeLeon v. Higuera, 5 Pacific State Reports, 15 Cal. 483, (reference to another instrument in which it is described is sufficient); Wilson v. Boyce, supra. Consequently, in our opinion, the language "shall have a lien * * in any real property or leasehold owned

by any maker * * *" not only sufficiently describes with particularity the real estate sought to be charged but also upon recordation of the note and collateral security agreement there can be no question of appropriation.

Much time was devoted by both sides in arguments and citations of authority on the issue of recordations and acknowledgments pursuant to R.S.Mo. 1959, §§ 442.130, 442.150, 442.260, 442.280, 442.290, and 442.380, V.A.M.S. In our opinion, a decision of these issues is unnecessary to the case. The evidence shows, and we find that defendants, Urbahns, had actual knowledge. Dale A. Urbahns, at the time of acquisition, admitted that at the time of closing he knew that some kind of instrument was of record against the property, although he did not know the legal implications thereof. Besides, the evidence shows that Urbahns' real estate agent, Ken Smith, ordered the title brought up-to-date and received a document bearing the caption "Commitment to Insure" the title to the property. (Appellant's Exhibit No. 7) This exhibit showed the note as an exception to the title policy, a defect, objections and charges to be removed, and a lien and encumbrance to be satisfied. Smith testified that he questioned it with the title company. We hold that knowledge of the agent is chargeable to the principal. Hedrick v. Beeler, 110 Mo. 91, 19 S.W. 492; Cooper v. Newell, 263 Mo. 190, 172 S.W. 326. Consequently, we don't have the issue of innocent third-parties or bona fide purchasers for value without notice. See Smith, Inc., supra, 280 S.W.2d p. 702 (2). Therefore, even if we assume, without so deciding, that in some manner the recordings and acknowledgments were not in substantial compliance with the applicable statutes, this would leave unchanged the respective rights as between the parties and third-party purchasers who had notice. See Elsea v. Smith, 273 Mo. 396, 202 S.W. 1071, wherein it is set forth that acknowledgment is not a prerequisite to the validity of a deed or to a valid transfer

by it of title from grantor to grantee. The purpose of acknowledgment being to admit the instrument to record to protect creditors and subsequent purchasers. Therefore, we hold that the Urbahns were purchasers for value, but inasmuch as they had knowledge of the appellant's claim, they took the property in question with all its impediments. We further find appellant's lien to be in the sum of $2,416.08, plus interest.

Appellant claims that the Court committed error in not allowing it an attorney fee pursuant to the note. We recognize, as does the appellant, that attorney fees, unless authorized by statute or by a court of equity in certain cases, are personal in nature and depend upon contract. Duncan v. Townsend, Mo.App., 325 S.W.2d 67. It is true that the note stated, " * * * The makers * * * in case payment of this note shall not be made at maturity, and * * is placed in the hands of an attorney for collection, they will pay an attorney's fee of ten percent of principal and interest * * unpaid." Nevertheless, this is not a suit on the note, but rather a suit to establish and foreclose a lien. Accordingly, we turn to the collateral security agreement, which provides by paragraph 4 as follows:

> "(4) * * * said Bank may * * * sell at public or private sale * * any part or all of property * * held by it as collateral security or on which it may have a lien as provided herein * * *.
>
> "From the proceeds of such sale or sales there shall be first deducted the amount of all expenses thereof, including attorney's fees of said Bank, and the balance shall be applied to the payment of this note and other liabilities of the undersigned to said Bank * * *."

In our opinion, we construe the language of paragraph 4 " * * * Bank may sell * * * property * * * on which it may have a lien * * * (and) from the pro-

ceeds of such sale or sales there shall be first deducted * * * expenses * * * including attorney's fees * * * " to mean that there must first be a sale under foreclosure of the lien. Thereafter, an application can be made to the Court for an attorney's fee and a determination as to the amount. Accordingly, we hold that appellant's claim for an attorney's fee is premature.

Finally, appellant claims that the Court committed error in holding that it was not entitled to a general judgment against Betty M. Shireman as such issue was not before the Court. Lorraine v. E. M. Harris Bldg. Co., Mo.App., 391 S.W.2d 939. Appellant introduced into evidence, (Exhibit No. 6) an authenticated copy of a magistrate judgment against Betty M. Shireman, to-wit: " * * * Judgment in favor of plaintiff for $2,416.08; $338.25 interest; $83.92 atty's fee, aggregating $2,838.25 and costs." Betty M. Shireman, in her amended answer, which was denied in appellant's reply, pleaded her discharge. in bankruptcy. The evidence showed, and the trial court found, that she did file a voluntary petition in bankruptcy on June 27, 1961, and was discharged in bankruptcy on October 2, 1961, and that the note was included in the schedule which showed the magistrate court suit then pending. Appellant admitted the authenticity of the exhibit but objected very generally to its use. If this were a case at law, we would have to hold that appellant's objection was too general to convict the trial court of error, but since this is a case in equity, it is our duty to pass upon the matter. Fullerton v. Fullerton, 345 Mo. 216, 132 S.W.2d 966, 969(4). Inasmuch as the materiality of evidence is determined by the issues set forth in the pleadings, we rule against appellant as to the exhibit's admissability. We also hold that the issue as to discharge in bankruptcy was properly before the trial court; hence, we see no reason to convict the Court of error in holding that appellant was not entitled to a general judgment against Betty M. Shireman.

For the reasons herein stated, the judgment entered in favor of defendants, Betty M. Shireman and Marie Stewart, and against appellant is hereby affirmed. It is further ordered that the judgment entered in favor of defendants, Dale A. Urbahns and his wife, Mrs. Dale A. Urbahns, and against appellant be and the same is hereby reversed, and the trial court is hereby ordered to enter a judgment consistent with this opinion.

ANDERSON, P. J., and RUDDY, J., concur.